**Ashley R. TROUT, Appellant**

v.

**Paul David STRUBE, Appellee.**

Superior Court of Pennsylvania.

Argued May 14, 2014.

Filed July 24, 2014.

George R. Studzinski, York, for appellant.

Jeffrey A. Conrad, Lancaster, for appellee.

BEFORE: FORD ELLIOTT, P.J.E., OLSON, and STRASSBURGER,* JJ.

OPINION BY STRASSBURGER, J.:

Ashley R. Trout (Trout) appeals from the August 26, 2013 order denying her petition seeking to extend the final Protection From Abuse (PFA) order issued against her former paramour, and father of her child, Paul David Strube (Strube). After careful review, we affirm.

On August 6, 2010, Trout filed a petition with the York County Court of Common Pleas seeking a temporary PFA order against Strube, pursuant to the Protection from Abuse Act (the PFA Act).[1] On that date, the PFA court granted Trout's request and issued a temporary PFA order limiting Strube's contact with Trout, prohibiting Strube from harassing Trout, and ordering that Trout's father handle all custody exchanges on her behalf. A hearing on Trout's request for a final PFA order was scheduled for August 19, 2010. Strube was served with notice of the hearing and a copy of the temporary PFA order.

The August 19, 2010 hearing was rescheduled for August 26, 2010. Strube failed to appear for the August 26, 2010 hearing. On that date, the PFA court issued a final PFA order (2010 PFA order) on behalf of Trout, which prohibited Strube from having any contact with Trout and designated Trout's father as Trout's proxy during custody exchanges. The order was to be effective for three years from the date of issue.

On October 28, 2011, Strube sent two letters to Trout, one addressed directly to her and one addressed to their daughter. While the content of both letters was non-threatening, the contact with Trout nonetheless violated the terms of the 2010 PFA order. As a result, Strube was arrested, and on December 2, 2011, he was found guilty of indirect criminal contempt (ICC).[2] Strube was sentenced to a term of incarceration of not less than 30 days, nor more than 6 months.

On June 26, 2013, two months before the 2010 PFA order was set to expire, Trout, using a pre-printed form provided by the York County Prothonotary, filed a *pro se* petition seeking to extend the 2010 PFA order for an additional three years. Petition to Amend Protection from Abuse Order, 6/26/2013. Trout explained that Strube was "prohibited by statute from any contact" and alleged that Strube had violated the 2010 PFA order three times "throughout the years," although she failed to describe those violations in detail. *Id.* Thus, Trout averred that an extension was warranted because Strube had "committed one or more acts of abuse subsequent to the entry of the" 2010 PFA order, and

---

* Retired Senior Judge assigned to the Superior Court

1. 23 Pa.C.S. §§ 6101–6122.

2. 23 Pa.C.S. § 6114.

"engaged in a pattern or practice that indicates continuing risk of harm to [her] or [her] minor child." *Id.* A hearing on this petition was originally scheduled for July 25, 2013, but was continued to August 15, 2013.

At the hearing, Trout's counsel argued that, because Strube was convicted of ICC in 2011, Trout was entitled to an extension of the 2010 PFA order under subsection 6114(b)(4) of the PFA Act, which states that "upon conviction for indirect criminal contempt and at the request of the plaintiff, the court shall also grant an extension of the protection order for an additional term." 23 Pa.C.S. § 6114(b)(4). N.T., 8/15/2013, a 2–4.[3] Counsel for Strube disagreed, arguing that the non-threatening, non-abusive nature of Strube's technical violation of the 2010 PFA order rendered inapplicable subsection 6114(b)(4). *Id.* at 3. Rather, counsel argued that this matter was best evaluated under subsection 6108(e) of the PFA Act (related to extensions of PFA orders in general). *Id.* After much discussion, including questioning of why Trout had waited until 2013 to complain about conduct that occurred in 2011, the PFA court agreed to take the matter under advisement, with an order to follow.

On August 26, 2013, the trial court denied Trout's petition. On September 18, 2013, Trout filed a motion for reconsideration, which was denied on October 7, 2013. While her motion for reconsideration was pending, Trout timely filed her notice of appeal. Both the trial court and Trout complied with Pa.R.A.P. 1925.

Trout purports to raise the following three issues for our review.

1. Whether the plain language of Section 6114(b)(4) of the [Act] mandates an extension of a [PFA] order for an addi-

tional term upon a finding of [ICC] and at the request of the [petitioner].

2. Whether the [PFA] court erred as a matter of law by considering [Trout's] request for extension of the term of the order under the factors of Section 6108(e), including: whether the acts which led to the finding of ICC were abusive, threatening or violent; whether there had been additional abuse since the finding of ICC, and; whether [Trout] was at further risk of abuse, instead of Section 6114(b)(4).

3. Whether the local procedure of the [PFA] court—which required Trout to file a separate petition to modify the PFA order to extend the term of the order, and the court to hold a separate hearing on her request subsequent to a sentence for ICC, rather than entertaining a request from Trout to extend the term of the order at the time of sentencing of [Strube] for ICC—is in accordance with the law and resulted in a violation of Trout's due process rights.

Trout's Brief at 2–3 (trial court answers omitted). Since Trout's first and second questions are essentially the same issue, we consider them together.

 In general, we review the propriety of a PFA order for an abuse of discretion or an error of law. *Commonwealth v. Walsh*, 36 A.3d 613, 617 (Pa.Super.2012). When considering issues of statutory interpretation, the applicable standard of review is *de novo* and our scope of review is plenary. *Scott v. Shay*, 928 A.2d 312, 314 (Pa.Super.2007). As we have explained:

When we undertake statutory interpretation, our object is to ascertain and then effectuate the intention of the Legislature. 1 Pa.C.S.[ ] § 1921(a). When

---

**3.** Although Trout's petition averred that multiple instances of abuse occurred during the duration of the 2010 PFA order, her counsel clarified that there were no further violations following the one for which Strube was convicted in 2011.

possible, this Court construes every statute so as to give effect to all of its provisions. If the terms of a statute are clear and free of all ambiguity, we will not disregard the letter of the law in favor of pursuing its apparent spirit. However, when the words of a statute are not explicit, this Court must determine what it was that the General Assembly intended. We then apply the legislators' intent when interpreting the law in question.

*Scott,* 928 A.2d at 313–314 (some citations omitted).

■ On appeal, Trout challenges not only the denial of her request for an extension of the PFA order, but the procedure by which a protected person in York County may request an extension following a determination that the defendant was in contempt of an active final PFA order. Trout's Brief at 8. Her claims center around the PFA court's interpretation of subsection 6114(b)(4) of the PFA Act.

Section 6114 of the PFA Act, entitled "Contempt for Violation of Order or Agreement," governs the procedure for ICC hearings following the issuance of a final PFA order. The section provides, in pertinent part, as follows:

(a) **General rule.**—Where the police, sheriff or the plaintiff have [*sic*] filed charges of indirect criminal contempt against a defendant for violation of a protection order issued under this chapter, a foreign protection order or a court-approved consent agreement, the court may hold the defendant in indirect criminal contempt and punish the defendant in accordance with law.

(a.1) **Jurisdiction.**—A court shall have jurisdiction over indirect criminal contempt charges for violation of a protection order issued pursuant to this chapter in the county where the violation occurred and in the county where the protection order was granted. A court shall have jurisdiction over indirect criminal contempt charges for violation of a foreign protection order in the county where the violation occurred.

\*　　\*　　\*

(b) **Trial and punishment.**—

\*　　\*　　\*

(4) Upon conviction for indirect criminal contempt and at the request of the plaintiff, the court shall also grant an extension of the protection order for an additional term.

(5) Upon conviction for indirect criminal contempt, the court shall notify the sheriff of the jurisdiction which issued the protection order of the conviction.

23 Pa.C.S. § 6114.

Our interpretation of subsection (b)(4) is aided by the section's procedural history. In 1999, a panel of this Court held that the former version of section 6114 granted the ICC court itself the authority to extend PFA orders following a defendant's ICC conviction. The Court explained:

When a defendant allegedly violates a protection order, Section 6114 of the [PFA Act] allows police or a plaintiff to file a charge of indirect criminal contempt against the defendant. While punishing the contemnor is the primary goal of a contempt proceeding under Section 6114. *See Commonwealth v. Nelson,* [456 Pa.Super. 349] 690 A.2d 728, 731 ( [Pa.Super.] 1997), the legislative intent to also prevent further abuse through such a proceeding cannot be denied, as the plain language of the statute grants the court discretion to include in a sentence for contempt "other relief set forth in [the PFA]." *See* 23 Pa.C.S.[ ] § 6114(b). The remaining relief set forth in the PFA is specifically enacted

to stop the perpetration of abuse and includes the relief applied in the within case, namely, the extension of a protection order when a court finds that "defendant engaged in a pattern or practice that indicates continued risk of harm to the plaintiff or minor child." *See* 23 Pa.C.S.[ ] § 6108.

We thus recognize that the PFA confers authority unto a court presiding over a Section 6114 contempt hearing to bring about the cessation of abuse between parties and does not require a separate civil proceeding to extend an existing PFA order. Accordingly, we find that no abuse of the trial court's discretion occurred when it extended the PFA order in the within case. To hold otherwise would thwart the Act's overriding purpose of allowing courts to act swiftly to protect victims of continuing domestic abuse.

*Commonwealth v. Snell*, 737 A.2d 1232, 1235 (Pa.Super.1999) (footnote omitted).

In 2006, our legislature codified the *Snell* holding into subsection (b)(4). That subsection, found under the "trial and punishment" portion of the statute, indicates that an extension of the underlying PFA is a protective measure that may be imposed by the ICC court, in addition to any sentence imposed upon the defendant at the conclusion of the ICC hearing. *See* 23 Pa.C.S. § 6114(b)(4) ("Upon conviction for indirect criminal contempt and at the request of the plaintiff, the court **shall also** grant an extension of the protection order for an additional term.") (emphasis added). While use of the word "shall" makes properly requested extension mandatory, use of the word "also" limits the availability of the mandatory extension to the ICC court. This Court's holding in *Snell* makes clear that the legislative intent in adding subsection (b)(4) was to provide for extension orders based upon requests made **within the confines of the contempt proceeding.**

Applying the above to the case at bar, we hold that Trout is correct insofar as subsection (b)(4) mandates that, once certain conditions are met, the ICC court must grant an extension of a final PFA order.[4] We also agree with Appellant that York County's procedure requiring a protected person to complete a pre-printed form and request a separate civil hearing on the issue of a PFA extension following an ICC conviction, is at odds with section 6114 and, therefore, must be corrected.

Nonetheless, Trout is not entitled to relief. As stated above, the subsection and the case from which it is derived make clear that the request for an extension following an ICC conviction must be made before the ICC court. Instantly, Trout failed to make her request during the ICC proceeding. Instead of seeking an extension from the PFA court in the context of Strube's ICC conviction, Trout chose to wait 18 months before petitioning the PFA court. The procedural deficiencies of York County notwithstanding, Trout's request remains untimely, and was not filed in the correct court to trigger subsection 6114(b)(4). More importantly, her request was not made in connection with Strube's ICC proceeding. Accordingly, we hold that Trout is not now entitled to the benefit of an automatic extension under section 6114.[5]

---

4. We note that nowhere in the Act is there any indication as to how long the extension must or should be.

5. Even though Trout is not now entitled to an automatic extension under section 6114, she would be entitled, as would any petitioner, to an extension under subsection 6108(e), if she qualified. Subsection 6108(e) provides, in relevant part,

**(e) Extension of protection orders.—**
(1) An extension of a protection order may be granted:

Trout's second issue alleges that the PFA court erred in considering the factors enumerated under subsection 6108(e) in evaluating her section 6114 request for an extension of the 2010 PFA order. Because we have already held that section 6114 is inapplicable here, the PFA court did not err in considering this matter under subsection 6108(e)(1)(i).[6]

Order affirmed.

(i) Where the court finds, after a duly filed petition, notice to the defendant and a hearing, in accordance with the procedures set forth in sections 6106 and 6107, that the defendant committed one or more acts of abuse subsequent to the entry of the final order or that the defendant engaged in a pattern or practice that indicates continued risk of harm to the plaintiff or minor child.

23 Pa.C.S. § 6108(e)(1)(i). *See Snell, supra* at 1236 ("Section 6108(e) of the PFAA allows for the extension of a PFA order where a court finds, as the trial court did below, that the defendant engaged in a pattern or practice that indicates continued risk of harm to the plaintiff or minor child" and/or the defendant "represented a continued risk to" a protected person).

6. Trout argues only that the PFA court erred in proceeding under subsection 6108(e) rather than section 6114. She does not contend that the court's analysis under subsection 6108(e) was faulty. Such an argument would be futile as the PFA court pointed out.

The [c]ourt, in its discretion, has determined that [Trout] is no longer subject to or threatened with abuse, nor has she been for several years. The PFA Act is meant to protect a person from further abuse and is not meant to serve as punishment for past bad acts. Extending the PFA Order in this case would serve only to punish [Strube] for actions he committed approximately two years ago, for which he was incarcerated. In addition, those actions were the writing of letters to [Trout] and their daughter, letters that contained no threats, no violent imagery, and which did not disparage [Trout]. The [c]ourt is not satisfied that there is any risk of further abuse; therefore, there is no need to protect [Trout] from further abuse.

PFA Court Opinion, 8/23/2013, at 5.