J-S01031-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| A.L.D. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| A.D.R. | : | |
| | : | |
| Appellant | : | No. 1037 MDA 2018 |

Appeal from the Order Entered May 24, 2018
In the Court of Common Pleas of Lycoming County Civil Division at
No(s):  FC-2018-020592-AB

BEFORE:  PANELLA, P.J., MURRAY, J., and PELLEGRINI*, J.

MEMORANDUM BY PELLEGRINI, J.:  **FILED FEBRUARY 19, 2019**

A.D.R. (Respondent) appeals from the Protection from Abuse ("PFA") order, effective for one year, entered by the Court of Common Pleas of Lycoming County (trial court).  The PFA was sought, *pro se*, by ex-boyfriend A.L.D. (Petitioner), who contended that Respondent placed him in fear of bodily injury.  On appeal, Respondent contends that there was insufficient evidence to support that finding.  For the following reasons, we affirm.

Before the trial court, it was undisputed that Respondent and Petitioner were formerly in a relationship and have a son who was three years old at the time of the hearing.  Their relationship was tumultuous, with mutual PFA orders issued in 2015 and each the aggressor in physical incidents.  Petitioner had been convicted of simple assault and terroristic threats against Respondent.  He served a jail sentence and remained on probation during the relevant timeframes.  Respondent punched Petitioner in the head, rupturing

_____

\*   Retired Senior Judge assigned to the Superior Court.

his eardrum.[1]  In November 2017, the two signed a custody agreement but continued to have an intermittent romantic relationship until Respondent ended it in late January 2018.  The two continued to exchange text messages to discuss their son.

Petitioner testified that when he began a relationship with another woman in March 2018, Respondent's text messages became harassing and made references to "Kia girl."  Petitioner testified that his new girlfriend drove a Kia and that Respondent must have been driving past his house to monitor his driveway.  This was confirmed later in the hearing when Respondent's friend, K.B., testified that she and Respondent drove past Petitioner's residence on at least ten occasions.[2]  Petitioner testified that on April 14, 2018, one of his car tires was slashed.

The insulting text messages continued, with Respondent telling Petitioner that he would never be happy in his new relationship.  On April 24, 2018, Petitioner told her to stop texting unless it concerned their son.  The next day, Petitioner appeared at a doctor's office for his son's scheduled check-up.  While filling out paperwork, Respondent arrived and tried to take the forms from his hands.  Petitioner testified:

---

[1] The record does not indicate when either of these incidents occurred; the only reference is that Petitioner's assault took place "near the expiration of the [2015] PFA[.]"  N.T. Vol. II, 5/23/18, at 13.

[2] Respondent did not testify. The trial court found K.B. to be a biased witness.

> I felt extremely threatened by her because of her demeanor and the tone in which she was speaking to me, the look on her face. I pulled the paperwork back and leaned back away from her and told her to move away from me. She then took out her phone. I don't know if she was recording or not. She acted like she was recording me and said I'm going to get a PFA against you.

N.T. Vol. I, 5/18/18, at 9. Petitioner went on to state that it "seemed like she wanted to do me physical harm if I didn't give her what she wanted which was the paperwork." *Id*. at 13. Petitioner also played a video recording of the incident that the court found corroborative.[3] Respondent continued to text him after the appointment, telling him that if his new girlfriend stayed at his house overnight she would seek a PFA order.

The trial court granted Petitioner's PFA and Respondent appealed. In arriving at its determination, the trial court credited Petitioner's testimony that Respondent stalked and harassed Petitioner over a period of months. The trial court also emphasized that the text messages and other testimony demonstrated that she drove past Petitioner's house on multiple occasions. It found that this course of conduct culminated in the doctor's office incident on April 25 where she screamed at Petitioner while standing over him. Based on Respondent's prior conduct of striking Petitioner and rupturing his eardrum, the trial court concluded that her conduct caused Respondent to reasonably fear bodily injury.

---

[3] The video recording was played from Plaintiff's phone and was not admitted as an exhibit.

On appeal, Respondent contends that the evidence offered was insufficient to sustain a finding of abuse.[4] The moving party must prove "the allegation of abuse by a preponderance of the evidence." 23 Pa.C.S. § 6107(a). "Abuse" is specifically defined as

> The occurrence of one or more of the following acts between family or household members, sexual or intimate partners or persons who share biological parenthood:
>
> . . . .
>
> (5) Knowingly engaging in a course of conduct or repeatedly committing acts toward another person, including following the person, without proper authority, under circumstances which place the person in reasonable fear of bodily injury. The definition of this paragraph applies only to proceedings commenced under this title and is inapplicable to any criminal prosecutions commenced under Title 18 (relating to crimes and offenses).

23 Pa.C.S. § 6102(a).

---

[4] "In general, we review the propriety of a PFA order for an abuse of discretion or an error of law." **Trout v. Strube**, 97 A.3d 387, 389 (Pa. Super. Ct. 2014) (citation omitted). "In reviewing the validity of a PFA order, we must determine whether the evidence, in the light most favorable to petitioner and granting her the benefit of all reasonable inferences, was sufficient to sustain the trial court's determination that abuse was shown by the preponderance of the evidence." **S.W. v. S.F.**, 196 A.3d 224, 228 (Pa. Super. 2018) (citation omitted).

Respondent's argument lists three subparts.[5] First, she contends that the court erred by considering her prior assaultive history and the allegations of the eardrum injury. Second, the court erroneously weighed the evidence against Respondent. Third, the Petitioner failed to meet his burden.

As to any error in considering a history of violence between the parties, that claim is waived because Respondent did not object to its introduction. **See** Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). In any event, a prior history of violence is relevant and can be considered by the trial court.

A party seeking a PFA is not "rigorously limited to the specific allegations of abuse found in the Petition." **Miller on Behalf of Walker v. Walker**, 665 A.2d 1252, 1259 (Pa. Super. 1995) (citation omitted). The purpose of the Act is to prevent harm and "some flexibility must be allowed in the admission of evidence relating to past acts of abuse." **Id**. In short, past conduct is relevant and admissible. **Id**. (court did not abuse discretion in considering evidence of abuse occurring six years prior); **Buchhalter v. Buchhalter**, 959 A.2d 1260, 1264 (Pa. Super. 2008) (vacating order denying PFA petition where court barred evidence from petitioner about prior abuse; "The facts surrounding the

---

[5] Respondent's brief presents three discrete issues but fails to separately argue each, which contravenes the Rules of Appellate Procedure. **See** Pa.R.A.P. 2119(a) (requiring argument section to be divided into as many parts as there are questions argued). All the issues are argued together and we have parsed out the issues to the best of our ability.

prior PFA consent order are relevant to an understanding as to the reasonableness of [Petitioner]'s fear relative to the present petition."). When considering the incident at the doctor's office, it was proper for the trial court to consider a history of violence between the parties in determining whether Petitioner had a reasonable fear of bodily injury.

Next, Respondent argues that the trial court erroneously weighed the evidence because Petitioner's asserted fear of bodily injury is unbelievable. Given his conviction for attacking Respondent, combined with the size disparity[6] between the parties, Respondent argues Petitioner was not actually threatened. The trial court weighed this factor, just not in Respondent's favor. "It may be and it would appear from [re]view of the record that your level of assaultive behavior is certainly greater than her level of assaultive behavior. That's not what we're here to debate today." N.T. Vol. II, 5/23/18, at 66. What weight to accord that history is the trial court's prerogative. *See Miller*, *supra* at 1259 ("If the trial court found the testimony to involve events too distant in time to possess great relevance to the case, it could certainly have assigned less weight to the testimony.").

---

[6] Respondent's brief argues that Petitioner is over six feet tall and weighs at least 200 pounds, while Respondent is five feet three inches and 135 pounds. None of this was testified to at the hearing.

Additionally, Respondent avers that Petitioner's "allegations of feeling threatened . . . are somewhat suspect because the Petitioner stayed at the office . . . in the presence of the Respondent." Respondent's brief at 13.[7] Assuming that this argument undercuts the reasonableness of Petitioner's fear as a matter of law, this ignores that one does not have to flee when confronted with a danger of physical harm. Additionally, the trial court accepted Petitioner's explanation that he wanted to stay for his son's doctor appointment, and we must defer to that credibility determination. "Assessing the credibility of witnesses and the weight to be accorded to their testimony is within the exclusive province of the trial court as the fact finder." *S.W. v. S.F.*, 196 A.3d 224, 228 (Pa. Super. 2018) (quotation marks and citation omitted).

Finally, Respondent asserts that Petitioner failed to meet his burden by declining to call other eyewitnesses, such as the receptionist or other patients,

---

[7] Respondent states that "One must make the inquiry that if the Petitioner was so overcome with fear of [im]minent bodily injury why did he stay at the doctor's office after the appointment[?]" Respondent's brief at 13. This seems to contend that the trial court was required to find that he was in danger of "imminent bodily injury" not just "bodily injury." The imminence requirement is contained at 23 Pa.C.S. § 6102(a)(2) and applies to serious bodily injury. In contrast, the Section (a)(5) provision at issue here requires a "reasonable fear of bodily injury." The entire course of conduct must be considered in determining whether a fear of bodily injury was reasonable. *See T.K. v. A.Z.*, 157 A.3d 974, 978 (Pa. Super. 2017) (upholding PFA under same section at issue here where complainant "clearly testified to her deep concern for her safety, opining that [the] behavior would eventually escalate from repetitive stalking to seeking to cause her bodily harm.").

who saw the doctor's office incident. This argument is somewhat ironic given that Respondent did not testify to give her version of events and is just another request to overrule the trial court's credibility determinations. Respondent fails to cite a single case holding that a party seeking a PFA is required to call corroborating witnesses.

Accordingly, based on our review of the evidence, which the trial court found credible, there was sufficient evidence to sustain the finding that Petitioner was in reasonable fear of physical harm. We affirm the trial court order entering a PFA against Respondent.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/19/2019