J-A06006-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DEVIN THOMAS COOPER | : | |
| | : | |
| Appellant | : | No. 478 MDA 2018 |

Appeal from the Judgment of Sentence February 20, 2018
In the Court of Common Pleas of Cumberland County
Criminal Division at No(s):  CP-21-MD-0000081-2018

BEFORE:   OTT, J., NICHOLS, J., and PELLEGRINI[*], J.

MEMORANDUM BY OTT, J.:                          **FILED MAY 14, 2019**

Devin Thomas Cooper appeals from the judgment of sentence imposed on February 20, 2018, in the Court of Common Pleas of Cumberland County. Following a non-jury trial, the court found Cooper guilty of indirect criminal contempt (ICC) from a Protection from Abuse (PFA) Order[1] and sentenced him to pay the statutorily imposed costs of prosecution, a fine of $300, and extended the PFA Order for 3 years.  On appeal, Cooper challenges the sufficiency of the evidence and legality of his sentence.  Based upon the following, we affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] **See** 23 Pa.C.S.A. § 6114(a).

The facts as found by the trial court and the procedural history as stated in the trial court's May 14, 2018 opinion are as follows:

On June 10, 2015, [Cooper] and victim entered by mutual agreement, without any admission on [Cooper's] part of the allegations, into a final [PFA] Order ["Order"]. Paragraph 3 of that Order provided in part that "except as provided in paragraph 5 . . . [Cooper] is prohibited from having **ANY CONTACT** with [victim]." Paragraph 5 of the agreed upon [Order] was stricken by pen strikethrough of the entire custody paragraph. The [PFA] Order was to expire on June 10, 2018.

Victim testified that[,] on January 23, 2018, she was waiting for a doctor to call her when an unknown number appeared on her phone and she answered it. Victim indicated upon answering, a voice was heard indicating "you have a collect call from" then a person on the other end of the phone said "Cooper" really low and fast, after which the first voice came back on indicating payment options to accept this call to victim and then the call dropped.

Victim identified the voice of the person who said Cooper as being [Cooper], whom she has known since 2011 or 2012, and with whom she has a daughter. As parents they have no custody agreement or order regarding their daughter, and as previously noted, the custody provisions in the [PFA] Order had been stricken by their agreement.

At the time of the call, [Cooper] was incarcerated in Cumberland County Prison. [Lieutenant Mike Eickhoff] from the Cumberland County Prison testified as to the prison's inmate phone records, how they are created, and how each inmate is given a unique PIN number that is identified from a printout of the phone logs. The phone log for that date was introduced as Commonwealth's Exhibit 1, and it indicated that a call from [Cooper's] account, as identified by the PIN, was placed to the victim's number.

Victim was recalled and identified her phone number[,] which matched that which [Lieutenant Eickhoff] had previously identified as being called by the PIN associated with [Cooper].

[Cooper] took the stand on his own behalf and indicated he did make that call that had previously been identified by victim. Further, [Cooper] indicated that the purpose of the call was to

- 2 -

contact his daughter, whom he had last seen in May 2015, which was prior to the agreed upon entry of the [Order]. Further, [Cooper] acknowledged that there was no custody agreement. The Petition for Protection from Abuse indicates, at the time of its filing, the child was a year old, which would make her approximately four years old at the time [Cooper] placed this call.

[Cooper] had previously filed a Motion to Dismiss the Protection from Abuse Order, which he filed on his own[,] on July 10, 2017, which did not include any request for custody. After a review of the Petition, notation that the return address of [Cooper] was from a State Correctional Institute, and review of his criminal dockets in this county that indicated his convictions [sexual assault, criminal trespass, false imprisonment and simple assault of the victim herein], the Motion to Dismiss was denied on July 20, 2017.

Trial Court Opinion, 5/14/2018, at 2-4 (emphasis in original, paragraph numeration omitted, paragraphing altered).

A bench trial took place on February 20, 2018. At the conclusion of the testimony, the trial court found Cooper guilty of ICC and immediately ordered him to pay the costs of prosecution, a $300 fine, and extended the Order through February 2021. The instant, timely appeal followed.[2]

In his first claim, Cooper challenges the sufficiency of the evidence. Cooper's Brief, at 10-14. Specifically, Cooper claims that: (1) the order was not sufficiently clear; and (2) Cooper did not act with wrongful intent. *Id.* at 11-14. We disagree.

_____

[2] On March 28, 2018, in response to the trial court's order, Cooper filed a timely concise statement of errors complained of on appeal. On May 14, 2018, the trial court issued an opinion.

Our standard of review of a claim challenging the sufficiency of the evidence is as follows:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Brumbaugh*, 932 A.2d 108, 109-110 (Pa. Super. 2007) (citation omitted). "When reviewing a contempt conviction . . . we are confined to a determination of whether the facts support the trial court decision. We will reverse a trial court's determination only when there has been a plain abuse of discretion." *Id.* at 111 (citation omitted). Moreover,

> A charge of indirect criminal contempt consists of a claim that a violation of an Order or Decree of court occurred outside the presence of the court. Where a PFA order is involved, an indirect criminal contempt charge is designed to seek punishment for violation of the protective order. . . To establish indirect criminal contempt, the Commonwealth must prove: 1) the Order was sufficiently definite, clear, and specific to the contemnor as to leave no doubt of the conduct prohibited; 2) the contemnor had notice of the Order; [ ] 3) the act constituting the violation must

- 4 -

have been volitional; and 4) the contemnor must have acted with wrongful intent.

*Id.* at 110 (citations and quotation marks omitted).

In its opinion, the trial court aptly disposed of Cooper's sufficiency of the evidence claim as follows:

The [Order], as agreed, prohibited [Cooper] from any contact with victim, direct or indirect. It has been proven by the Commonwealth and admitted that [Cooper] made this contact in violation of a known standing protection order. By agreement, as noted by the striking of paragraph 5, in the protection order there was no exception drawn out for contact with the minor child. [Cooper] had previously shown that he is quite capable of filing motions on his own behalf, which could have been made in the custodial side of the court if the true intention was for contact with their child; however, he did not.

Trial Court Opinion, 5/14/2018, at 5.

Here, Cooper admitted that he made the call. N.T. Hearing, 2/20/2018, at 22. The agreed-upon Order prohibited any contact with the victim. Final Protection from Abuse Order, 8/10/2015, at unnumbered page 2. It was well within the discretion of the trial court, sitting as finder of fact, to not credit Cooper's testimony that the striking out of paragraph 5 of the Order somehow negated the no-contact provision.

Cooper also claims that the Commonwealth did not establish wrongful intent. We disagree. We have stated that an act is volitional if the individual makes it knowingly. ***Brumbaugh***, 932 A.2d at 110. We can impute wrongful intent by the substantial certainty that a defendant would be in contact with a victim, in violation of a PFA order. *Id.* Here, Cooper knowingly called the

victim's telephone number. Moreover, given that his daughter was only four years old at the time of the telephone call, there was substantial certainty that the victim, not the child, would answer the cell phone. Thus, we can impute wrongful intent to Cooper. **See Brumbaugh**, **supra**. Cooper's first claim lacks merit.

In his second issue, Cooper contends that the violation of the Order was *de minimis*. Cooper's Brief, at 14-17. We disagree.

At the hearing, Cooper did not specifically move to dismiss on the basis that the contact was *de minimis*, but rather made the argument to the court at the conclusion of the testimony. N.T. Hearing, 2/20/2018, at 32.

> We review a trial court's refusal to dismiss an infraction as *de minimis* for an abuse of discretion. An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will.
>
> Section 312 of the Crimes Code provides, in relevant part:
>
> § 312. *De minimis* infractions
>
> (a) General rule.—The court shall dismiss a prosecution if, having regard to the nature of the conduct charged to constitute an offense and the nature of the attendant circumstances, it finds that the conduct of the defendant:
>
> > (1) was within a customary license or tolerance, neither expressly negatived by the person whose interest was infringed nor inconsistent with the purpose of the law defining the offense;
> >
> > (2) did not actually cause or threaten the harm or evil sought to be prevented by the law defining the offense

> or did so only to an extent too trivial to warrant the condemnation of conviction; or
>
> (3) presents such other extenuations that it cannot reasonably be regarded as envisaged by the General Assembly or other authority in forbidding the offense.
>
> 18 Pa.C.S.A. § 312(a). An offense alleged to be *de minimis* in nature should not be dismissed where either harm to the victim or society in fact occurs.

***Commonwealth v. Toomer***, 159 A.3d 956, 959-960 (Pa. Super. 2017) (quotation marks and some citations omitted), *appeal denied*, 170 A.3d 979 (Pa. 2017).

Here, Cooper argues that the primary purpose of the PFAA was to prevent physical and sexual abuse and that contact with the complainant does not fall under the definition of abuse. Cooper's Brief, at 16-17. He also avers that the contact was brief, and, thus, we should consider it *de minimis* conduct. ***Id.***

> The trial court found that:
>
> The conduct of [Cooper] by his intentional contact with the victim was **specifically prohibited** and absent the relief [Cooper] had previously requested in the 2017 Motion to Dismiss, there was no custom license or tolerance for his actions. **No contact means no contact**, it cannot get any simpler. [Cooper's] contact with victim is the evil that was to be protected and prevented by the law establishing protection from abuse orders. Indeed, [Cooper's] contact actions were specifically envisioned by the General Assembly when they wrote the protection from abuse statute; otherwise, the Act would have no practical effect or enforceability. It was clear from the testimony that [Cooper's] actions met the threshold that warrants his activity being prohibited by the protection from abuse order and then enforced when violated. [Cooper] was aware of the protective order; he even sought to

have it dismissed; and he cannot be heard to complain when it is enforced.

Trial Court Opinion, 5/14/2018, at 5-6 (emphases in original). We agree. Cooper's interpretation would eviscerate that purpose, as all violations of the order that did not result in physical or sexual harm to the victim would be *de minimis*. Cooper's second claim must fail.

In his final issue, Cooper challenges the legality of his sentence. Cooper's Brief, at 18-19. Specifically, Cooper argues that the trial court lacked the authority to *sua sponte* extend the Order. **See id.** We disagree.

"Issues relating to the legality of a sentence are questions of law, as are claims raising a court's interpretation of a statute. Our standard of review over such questions is *de novo* and our scope of review is plenary." **Commonwealth v. Hawkins**, 45 A.3d 1123, 1130 (Pa. Super. 2012), *appeal denied*, 53 A.3d 756 (Pa. 2012) (citation omitted). Sentencing for indirect criminal contempt of a PFA order is governed by 23 Pa.C.S.A. § 6114, which provides in pertinent part:

**(b) Trial and punishment.**—

(1) A sentence for contempt under this chapter may include:

(i)(A) a fine of not less than $300 nor more than $1,000 and imprisonment up to six months; or

(B) a fine of not less than $300 nor more than $1,000 and supervised probation not to exceed six months; and

- 8 -

> (ii) **an order for other relief set forth in this chapter.**

23 Pa.C.S.A. § 6114(1) (emphasis added).

Cooper argues that the trial court imposed an illegal sentence when it extended the PFA order for an additional three years. Cooper's Brief at 18-19. Cooper relies upon 23 Pa.C.S.A. § 6114(b)(4) and this Court's decision in *Trout v. Strube*, 97 A.3d 387 (Pa. Super. 2014), to support his contention. However, his reliance on both is misplaced.

23 Pa.C.S.A. § 6114(b)(4) provides:

> Upon conviction for indirect criminal contempt and at the request of the plaintiff, the court shall also grant an extension of the protection order for an additional term.

Even though appellee (plaintiff below) did not request an extension, we find nothing in this subsection that prohibits a trial court from *sua sponte* extending a PFA order in appropriate circumstances. Rather, the plain language of the subsection removes the discretion of the trial court to deny an extension, if the victim requests one, after a finding of ICC.

Moreover, our decision in *Trout* does not support Cooper's argument. *Trout* did not concern an illegal sentence in an ICC proceeding but rather a peculiarity of York County local procedures, which did not allow a victim to request an extension of a PFA at sentencing on ICC proceedings but rather required her to file a separate petition. *Trout*, *supra* at 389. In that case, the victim waited for approximately eighteen months from the contempt proceeding before filing the request for an extension under 23 Pa.C.S.A.

6114(b)(4). *See id.* at 388-389. While holding that the York County procedure conflicted with 23 Pa.C.S.A. § 6114, our Court ultimately concluded that the victim's lengthy delay in seeking relief was fatal to her request for an extension pursuant to Section 6114(b)(4) because that section specifically limits itself to requests made at the time of conviction. *See id.* at 391. The *Trout* court did not discuss whether a trial court could *sua sponte* extend a PFA order at the time of an ICC conviction or discuss sentencing authority under 23 Pa.C.S.A. § 6114(b)(1)(ii).

In *Commonwealth v. Snell*, 737 A.2d 1232 (Pa. Super. 1999), the appellant argued that a trial court could not extend a PFA order following a finding of ICC. *Snell*, *supra* at 1235. We disagreed, stating:

> The purpose of the PFAA is to protect victims of domestic abuse, and it does so through numerous provisions that enable courts to respond quickly and flexibly to both early signs and subsequent acts of abuse with the issuance of protection orders. The trial court has discretion in choosing between remedies afforded by the PFAA, and this Court will review the trial court's determination of what constitutes an appropriate remedy only for abuse of discretion.
>
> When a defendant allegedly violates a protection order, Section 6114 of the PFAA allows police or a plaintiff to file a charge of indirect criminal contempt against the defendant. While punishing the contemnor is the primary goal of a contempt proceeding under Section 6114, the legislative intent to also prevent further abuse through such a proceeding cannot be denied, as the plain language of the statute grants the court discretion to include in a sentence for contempt "other relief set forth in [the PFA]." *See* 23 Pa.C.S.A. § 6114(b). The remaining relief set forth in the PFA is specifically enacted to stop the perpetration of abuse and includes the relief applied in the within case, namely, the extension of a protection order when a court finds that "defendant

engaged in a pattern or practice that indicates continued risk of harm to the plaintiff or minor child."

We thus recognize that the PFA confers authority unto a court presiding over a Section 6114 contempt hearing to bring about the cessation of abuse between parties and does not require a separate civil proceeding to extend an existing PFA order. Accordingly, we find that no abuse of the trial court's discretion occurred when it extended the PFA order in the within case. To hold otherwise would thwart the Act's overriding purpose of allowing courts to act swiftly to protect victims of continuing domestic abuse.

*Id.* at 1235 (citations omitted). Thus, it is evident that pursuant to 23 Pa.C.S.A. § 6114(b)(1)(ii), the trial court had the authority to extend the PFA order and, therefore, Cooper's sentence is legal.[3] Thus, his final claim lacks merit.

For the reasons discussed above, Cooper's claims do not merit relief. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 05/14/2019

---

[3] We note that Cooper does not challenge the discretionary aspects of his sentence and does not contend that the trial court did not make appropriate findings of fact before imposing sentence. Cooper's Brief, at 18-19.