J-A28010-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| CHANIEKA GRAHAM NELSON | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| FITZROY A. NELSON | : | No. 659 EDA 2024 |

Appeal from the Order Entered February 5, 2024
In the Court of Common Pleas of Philadelphia County
Domestic Relations at No(s): 2104V7173

BEFORE: PANELLA, P.J.E., STABILE, J., and NICHOLS, J.

MEMORANDUM BY PANELLA, P.J.E.: **FILED FEBRUARY 25, 2025**

Chanieka Graham Nelson ("Chanieka Nelson") appeals from the order entered on February 5, 2024, denying her petition for an extension of a protection from abuse ("PFA") order against her husband, Fitzroy A. Nelson ("Nelson"). Chanieka Nelson asserts the trial court erred in finding insufficient evidence for the extension and erroneously applied an objective standard to determine what constitutes "harm" under the statute.[1] After careful review, we reverse and remand.

On August 30, 2021, the trial court entered a final PFA order providing Nelson "shall not abuse, harass, stalk, threaten, or attempt or threaten to use physical force against" Chanieka Nelson for a period of 18 months. Order,

_____

[1] 23 Pa.C.S.A. § 6108(e)(1)(i).

8/30/21, at 1. Just before the order was about to expire in February of 2023, Chanieka Nelson filed a petition to extend the PFA order alleging Nelson "violated the [o]rder and has engaged in a pattern or practice so that [Chanieka Nelson] reasonably believes [Nelson] will continue to abuse, harass, stalk and/ or threaten her." Petition to Extend Protection from Abuse Order, 2/21/23, at 2. Specifically, Chanieka Nelson asserted Nelson "appeared outside of places he is aware [Chanieka Nelson] frequently must visit." **Id.** A hearing was scheduled, but due to continuances requested by both parties, the hearing was not held until February 1, 2024. A temporary PFA order was entered by the trial court which remained in effect until the hearing on February 1, 2024.

At the hearing, Chanieka Nelson testified that she and Nelson have one child together. **See** N.T. PFA Hearing, 2/1/24, at 31. However, after entry of the final PFA order, Chanieka Nelson did not allow Nelson to have any contact with the children.[2] **See id.** at 32. Chanieka Nelson further testified to the contact Nelson attempted to have with her after the final PFA order had been entered. Chanieka Nelson explained Nelson called her multiple times, had his family call her multiple times, and Nelson followed her to her local grocery store and pharmacy. **See id.** at 13-15. Chanieka Nelson described her local grocery store and pharmacy as 40 minutes away from Nelson's home and

_____

[2] Chanieka Nelson has another child from a prior relationship.

- 2 -

were places he knew she must frequent. ***See id.*** While at the pharmacy, Nelson approached Chanieka Nelson and started to argue with her about insurance because Chanieka Nelson was still on Nelson's insurance policy. ***See id.*** at 15.

After the hearing, the trial court took the matter under advisement and issued its ruling on February 5, 2024. The trial court rejected Chanieka Nelson's claims regarding Nelson and his family calling her, but did find credible her claims of his attempts to contact her in-person on two separate occasions. Even though this evidence was found credible, the trial court held it did not amount to abuse nor a pattern or practice that indicated a continued risk of harm to Chanieka Nelson. The trial court denied the petition to extend. Chanieka Nelson filed a timely appeal.[3] Both Chanieka Nelson and the trial court complied with Rule 1925. ***See*** Pa.R.A.P. 1925(a), (b).

Chanieka Nelson raises the following two issues:

[1.] Whether the evidence was sufficient to support that [Nelson] engaged in a pattern or practice that indicates continued risk of harm to [Chanieka Nelson]?

[2.] Whether the Protection from Abuse Act requires an objective standard for evaluating whether a petitioner is at continued risk of harm by a defendant?

Appellant's Brief, at 4 (answers below and suggested answers omitted).

---

[3] Nelson has not filed an appellee's brief.

For ease of disposition, we will address Chanieka Nelson's arguments together. Our well-settled standard of review regarding PFA orders is for an abuse of discretion or error of law. ***See E.A.M. v. A.M.D., III***, 173 A.3d 313, 316 (Pa. Super. 2017). An abuse of discretion is "not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused." ***Id.*** (citation omitted). "This Court defers to the credibility determinations of the trial court as to witnesses who appeared before it." ***K.B. v. Tinsley***, 208 A.3d 123, 128 (Pa. Super. 2019) (citation omitted).

To the extent Chanieka Nelson's claims require statutory interpretation, our standard of review is de novo, and our scope of review is plenary. ***See Trout v. Strube***, 97 A.3d 387, 389 (Pa. Super. 2014). We have held:

> When we undertake statutory interpretation, our object is to ascertain and then effectuate the intention of the Legislature. When possible, this Court construes every statute so as to give effect to all of its provisions. If the terms of a statute are clear and free of all ambiguity, we will not disregard the letter of the law in favor of pursuing its spirit. However, when the words of a statute are not explicit, this Court must determine what it was the General Assembly intended. We then apply the legislators' intent when interpreting the law in question.

***Id.*** at 389-90 (citations omitted).

It is axiomatic that the PFA Act is designed "to protect victims of domestic violence from those who perpetrate such abuse, with the primary

goal of advanc[ing] prevention of physical and sexual abuse." ***Buchhalter v. Buchhalter***, 959 A.2d 1260, 1262 (Pa. Super. 2008) (citation omitted). After a final PFA order is entered, a trial court may grant a request for an extension of the final PFA order "[w]here the court finds … that the defendant committed one or more acts of abuse subsequent to the entry of the final order or that the defendant engaged in a pattern or practice that indicates continued risk of harm to the plaintiff or minor child." 23 Pa.C.S.A. § 6108(e)(1)(i). The petitioner bears the burden of proving either a new act of abuse or a pattern or practice indicating continued risk of harm by a preponderance of the evidence. ***See id.*** "A preponderance of the evidence standard is defined as the greater weight of the evidence, *i.e.*, to tip a scale slightly is the criteria or requirement for preponderance of the evidence." ***K.B.***, 208 A.3d at 128 (citation omitted).

Chanieka Nelson argues the trial court erred in finding the two in-person contacts insufficient to show a pattern or practice that indicates a continued risk of harm. ***See*** Appellant's Brief, at 13-14. Neither "pattern or practice" nor "harm" is defined by the PFA Act. ***See*** 23 Pa.C.S.A. § 6102 (providing the definitions for words and phrases used in the PFA Act). We will address each in turn.

Chanieka Nelson asks us to find the two incidents of following her, along with the subjective fear and anxiety she suffered from those incidents, are sufficient to find Nelson engaged in a pattern or practice that indicates a

continued risk of harm to her. *See* Appellant's Brief, at 13-14, 21-22. We begin by providing the trial court's explanation for finding these two incidents were not sufficient to grant an extension of the final PFA order:

> There was … testimony about two direct or near-direct in-person contacts with [Chanieka Nelson]. According to [Chanieka Nelson's] testimony, the first alleged contact occurred when [Chanieka Nelson] was in a Shop Rite supermarket in October of 2022, when [Chanieka Nelson] testified credibly she saw [Nelson] in the store, and she and her children left the store. There was no direct contact. [Nelson] denied having any in-person contact with [Chanieka Nelson], but his denial was not credible. Nevertheless, this incident — considered alone or in conjunction with others — did not constitute abuse nor indicate a continued risk of harm.
>
> The next alleged incident involved [Chanieka Nelson's] testimony that [Nelson] approached her in a pharmacy and tried to talk to her about an insurance issue. [Chanieka Nelson] testified that this incident occurred in early 2023. [Chanieka Nelson's] testimony regarding this incident was credible but was also vague. According to [Chanieka Nelson], [Nelson] was angry because [Chanieka Nelson] was still on his insurance plan, and he tried to argue with her about that. Th[e trial c]ourt found [Chanieka Nelson's] testimony about this contact to be credible, but this contact and attempt to argue with her about insurance did not constitute abuse under the PFA [A]ct nor was it a pattern or practice that indicated a continued risk of harm to [Chanieka Nelson].

Trial Court Opinion, 5/6/24, at 16-17.

While the trial court found Chanieka Nelson credibly testified to the two in-person contacts, it oddly found the two separate and distinct incidents of Nelson traveling approximately 40 minutes away from his own home to have contact with Chanieka Nelson was not a pattern or practice that indicated a

continued risk of harm.[4] This decision is further confounded by the trial court's finding that these two incidents "might have amounted to some form of harassment[.]"[5] *Id.* at 8.

Nelson was specifically precluded from harassing Chanieka Nelson in the final PFA order. *See* Final PFA Order, 8/20/21, at 1. We fail to see how two incidents of harassment that are temporally and spatially distinct do not amount to a pattern or practice. We therefore find that the trial court erred in holding otherwise.

Turning to whether this pattern or practice indicated a continued risk of harm, Chanieka Nelson asks us to find that harm does not need to be reasonable. *See* Appellant's Brief, at 17-18. As there is no case law directly on point, Chanieka Nelson compares the PFA's language to the Protection of Victims of Sexual Violence or Intimidation Act ("PVSVIA"). *See id.* at 19-21. The PVSVIA requires a plaintiff seeking protection under its Act to "prove by a preponderance of the evidence that the plaintiff or another individual, as appropriate, is at a continued risk of harm from the defendant." 42 Pa.C.S.A. § 62A06(1)(2).

---

[4] We agree with the trial court that neither of these incidents constituted abuse under the PFA Act.

[5] We agree with the trial court that these two incidents establish harassment under subsections 2709(a)(2) and (3), as Nelson followed Chanieka Nelson "in or about a public place or places" and "engage[d] in a course of conduct or repeatedly commit[ed] acts which serve no legitimate purpose." 18 Pa.C.S.A. § 2709(a)(2), (3).

Our Supreme Court addressed this language in **K.N.B. v. M.D.**, 259 A.3d 341 (Pa. 2021). In **K.N.B.**, the plaintiff filed for a sexual violence protective order ("SVPO") under the PVSVIA after she was sexually assaulted by the defendant, M.D. **See K.N.B.**, 259 A.3d at 344-45. The trial court granted the SVPO and M.D. appealed. **See id.** at 346. M.D. argued, *inter alia*, the trial court erred in finding K.N.B. was at a continued risk of harm. **See id.** at 347. The Superior Court affirmed, and our Supreme Court granted allowance of appeal to determine, *inter alia*, "whether the continued risk of harm element can be demonstrated based solely on the victim's subjective fear of harm." **Id.**

M.D. argued there must be a finding that the defendant intended to harm the plaintiff under the PVSVIA. **See id.** at 350. The Court disagreed. **See id.** at 350-352. In evaluating the language of the statute in question, the Court held:

> [N]othing in the text of the PVSVIA indicates that the statute's second prong rises or falls depending upon whether the defendant intends to harm the plaintiff. The law requires only what it says: the plaintiff must prove that he or she (or another individual) is "at continued risk of harm from the defendant." The defendant's own intent may inform this inquiry in some cases. When a plaintiff argues that she risks additional physical abuse by the defendant, for example, the defendant's own subjective intent likely will influence the trial court's risk-of-harm analysis.
>
> Here, however, the trial court found that K.N.B. risks ongoing harm from M.D. given that his very presence triggers K.N.B.'s panic attacks. …
>
> ***

> [W]e decline M.D.'s invitation to read into the PVSVIA a requirement that a plaintiff's fear of encountering the defendant must be objectively reasonable under the circumstances. While M.D. argues at length in his brief that the Commonwealth would be better served by a law that incorporates an objective, reasonable-person standard, the fact remains that this Court is not permitted to revise or improve upon unambiguous statutory language. And there is simply no textual support for the conclusion that a PVSVIA plaintiff's fear of harm must be analyzed used an objective, reasonable-person standard.

*Id.* at 351-52 (citations and footnote omitted).

We are required to follow our Supreme Court's directive. "This Court has described the PVSVIA as a counterpart to the [PFA Act]." *In re R.H.M.*, 303 A.3d 146, 149 (Pa. Super. 2023) (citation and internal quotation marks omitted). We therefore find our Supreme Court's interpretation of the PVSVIA instructive in interpreting the PFA Act.

An extension of a final PFA order is permitted where "the defendant engaged in a pattern or practice that indicates a continued risk of harm to the plaintiff[.]" 23 Pa.C.S.A. § 6108(e)(1)(i). Just as in the PVSVIA, there is no reasonableness requirement written into the statute. As such, the trial court erred in denying the extension because "[Nelson] did not injure [Chanieka Nelson], attempt to injure her, or threaten to injure her." Trial Court Opinion, 5/6/24, at 1. The trial court found that "Chanieka Nelson feels annoyed and harassed by every contact [Nelson] had with her." *Id.* at 20. Chanieka Nelson testified that seeing Nelson at the Shop Rite caused her to leave her groceries and immediately leave the store. *See* N.T. PFA Hearing, 2/1/24, at 13. She felt anxious and panicky after seeing him there. *See id.* When she saw him at

the pharmacy, she "went into a whole panic mode." *Id.* **a**t 15. She further explained she was "[v]ery scared." *Id.* The trial court found Chanieka Nelson testified credibly to these two incidents. *See* Trial Court Opinion, 5/6/24, at 16-17. Chanieka Nelson clearly suffered emotional harm.

Nelson placed Chanieka Nelson at continued risk of harm by causing her fear and anxiety which is a form of mental and emotional harm. Nelson's two acts of following Chanieka Nelson to two places, both 40 minutes from his home, and arguing with her about insurance during one of the incidents, shows a pattern or practice indicating he will continue to put her at risk of mental and emotional harm if a PFA extension is not granted. We therefore conclude the trial court erred in denying Chanieka Nelson's petition for extension of the final PFA order.

Order reversed. Case remanded for proceedings consistent with this Memorandum. Jurisdiction relinquished.

Judge Nichols joins the memorandum.

Judge Stabile files a dissenting memorandum.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/25/2025

- 10 -