J-S18007-23

2023 PA Super 238

COMMONWEALTH OF PENNSYLVANIA      :    IN THE SUPERIOR COURT OF
                                  :           PENNSYLVANIA
                                  :
            v.                    :
                                  :
                                  :
                                  :
RAFFAELA MARIE SPONE              :
                                  :
            Appellant             :    No. 1623 EDA 2022

Appeal from the Judgment of Sentence Entered June 6, 2022
In the Court of Common Pleas of Bucks County
Criminal Division at No(s):  CP-09-CR-0002264-2021

BEFORE:   PANELLA, P.J., DUBOW, J., and STEVENS, P.J.E.[*]

OPINION BY PANELLA, P.J.:                    **FILED NOVEMBER 14, 2023**

This direct appeal filed by Raffaela Marie Spone follows her convictions

of three counts of harassment. In addition, Spone has filed an application for

post-submission communication. We affirm the appeal and deny the

application for post-submission communication.

Spone's daughter was a member of a competitive cheerleading gym.

Beginning in July 2020, Spone began sending anonymous text messages

regarding behavior of other cheerleaders at the gym.[1] Individual text

messages were initially sent on July 6, 2020 to the owner of the gym and an

assistant director at the gym that included images of M.H., a student at the

_____

[*] Former Justice specially assigned to the Superior Court.

[1] As the Commonwealth correctly notes, **see** Commonwealth's Brief at 12 n.1,
none of Spone's arguments on appeal are based on a contention that she was
not the author of the text messages at issue in this case.

gym. The images were accompanied by language indicating the anonymous sender's "concern." The following day, the owner and his business partner met with M.H.'s mother to alert her of the situation.

On July 10, 2020, Spone anonymously initiated a group text with the owner, the assistant director and also the business partner, which shared images and videos of M.H. and included languages questioning "why this matter is not being taken seriously." The owner of the gym forwarded the messages to M.H.'s mother.

Spone then began sending anonymous text messages directly to M.H.'s mother. Each of the text messages came from different numbers. The texts included images of M.H. and language feigning concern for M.H.

On August 1, 2020, Spone sent a series of anonymous text messages to the mother of K.R., another cheerleader at the gym. These messages contained images K.R. taken from social media platforms and included language sharply criticizing K.R.'s behavior.

Several days later, Spone began to focus on I.N., another member of the gym. On August 11, 2020, Spone anonymously texted I.N.'s mother sending pictures I.N. and claiming to be a "concerned parent." The following day, Spone sent additional anonymous messages with more images captured from social media accounts.

Detective Louis Bell of the Hilltown Township Police Department became involved in the investigation and discovered that all the numbers from which

the anonymous texts were sent were attributed to users of the Pinger App. Records from Pinger established that all of the phone numbers used to send the anonymous messages were attributed to an IP address associated with Spone. Therefore, Spone's cell phone was seized, and review of the data retrieved confirmed that the anonymous text messages were sent from Spone's cell phone.

On March 4, 2021, Spone was charged with three counts of cyber harassment of a child and three counts of harassment.[2] Following a preliminary hearing, all charges were held for trial. Spone then filed a petition for writ of habeas corpus, which the trial court denied following a hearing.

At the beginning of trial, the Commonwealth sought leave to withdraw the three counts of harassment of a child, and the trial court granted the request. On March 25, 2022, the jury convicted Spone of the remaining three counts of harassment. On June 6, 2022, the trial court sentenced Spone to three consecutive one-year terms of probation. This timely appeal followed, presenting claims challenging the sufficiency of the evidence and alleging due process violations.

Spone first argues that the evidence was insufficient to support her three harassment convictions. *See* Appellant's Brief at 37-48. Appellant divides her argument into two sub-issues. She initially asserts that her

_____

[2] 18 Pa.C.S.A. §§ 2709(a.1)(1)(i) and 2709(a)(5).

conduct had a legitimate purpose of alerting adults of allegedly concerning misconduct by students from the gym. *See id*. at 39-43. Spone posits that her "messages to the parents of her daughter's friends were legitimate communication because they furthered a legitimate interest of protecting her daughter and other young children." *Id*. at 41. She concludes that her conduct was not harassment because the communication was legitimate, having been sent to "the parents, who have broad authority over their children, and with their coaches who have some control over their students." *Id*. at 43.

We review challenges to the sufficiency of the evidence with great deference to the credibility determinations of the fact finder:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Gause*, 164 A.3d 532, 540-41 (Pa. Super. 2017) (*en banc*) (citation omitted).

Section 2709(a)(5) of the Crimes Code provides that "A person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person communicates repeatedly in an anonymous manner." 18 Pa.C.S.A. § 2709(a)(5). The harassment statute defines "communicates" as, "Conveys a message without intent of legitimate communication or address by … electronic means, including telephone, electronic mail, Internet, facsimile, telex, wireless communication or similar transmission." 18 Pa.C.S.A. § 2709(f). We have held that an intent to harass may be inferred from the totality of the circumstances. *See Commonwealth v. Cox*, 72 A.3d 719, 721 (Pa. Super. 2013).

Our review of the record reflects the following series of events transpired. Both McTague, the owner of the gym, and Steglick, assistant director at the gym, testified that on July 6, 2020, Spone sent them anonymous text messages complaining about M.H.'s behavior that was observed in social media posts. *See* N.T., 3/22/2022, at 59, 116-117. The messages were accompanied by images of M.H., which the sender described as upsetting. When questioned by McTague as to her identity, Spone responded via text: "A concerned parent." Commonwealth's Exhibit C-1.

Furthermore, the Commonwealth presented evidence that on July 10, 2020, McTague, Steglick and Kelly Cramer, a gym business partner, received an anonymous group text, which included a message and pictures and video of M.H.. The message stated:

It seems we have brought to your attention some grave concerns involving stealing of property, painting it and a video where a blue object is used with white smoke like coming out. This still appears on social media and young children see this and this is no [sic] acceptable. I do not u[n]derstand why this matter is not being taken seriously as many parents are talking about this. Anonymity is my reason. I do not like that my young child is able to view this.

Commonwealth Exhibit C-2. In reaction, the gym partners forwarded the messages to M.H.'s mother in the event she needed to share the message with police. *See* N.T., 3/22/2022, at 109. M.H.'s mother testified that she felt "uneasy and frightened" upon learning of the text messages, and she described M.H. as "distraught." N.T., 3/23/22, at 16-17.

Spone then began to anonymously text M.H.'s mother. On July 26, 2020, M.H.'s mother received texts and images concerning M.H that feigned concern "about this being on social media." Commonwealth Exhibit C-4. On July 31, 2020, Spone sent a slew of text messages and images regarding M.H.'s trip to the beach. *See* Commonwealth Exhibit C-5. In response, M.H.'s mother pleaded with the anonymous texter, *i.e.* Spone, to stop. *See id*. M.H.'s mother expressed that the text messages made her afraid to leave M.H. alone. *See* N.T., 3/23/22, at 38. M.H. testified that the messages made her feel "paranoid and scared to go out." *Id*. at 180.

On August 1, 2020, Spone turned her focus to K.R. and began anonymously texting K.R.'s mother regarding K.R.'s behavior as depicted on social media. *See* N.T., 3/23/22, at 216. K.R.'s mother responded to the anonymous text with the following series of text messages:

Whoever this is I already know what my kid is doing and get a fucking life mind your own fucking business. And stop being a punk and hiding behind a fake number [too]. If you have to tell me bout my daughter drive over and tell me to my face. Could only guess this is [A.S.] or [Spone]. Get a life and move on. Also stop letting your 16-year-old hang out with older kids maybe you need to watch what you're doing with your kid and stop letting her smoke. Oh also. I have lots of pictures of your then 15 smoking weed if you would like them.

Commonwealth Exhibit C-6. K.R.'s mother indicated that the anonymous texts made her scared for K.R. **See** N.T., 3/23/22, at 232. Likewise, K.R. testified that the text messages made her "freaked out" and scared. **See id**. at 245.

Undeterred, on August 11, 2020, Spone began to send anonymous text messages to I.N.'s mother. **See** N.T., 3/23/22, at 265-266. The messages included images of I.N. **See** Commonwealth's Exhibit C-7. When I.N.'s mother repeatedly asked the texter's identity, the inquiry went unanswered. **See id**. The following day, August 12, 2020, I.N.'s mother received additional anonymous text messages and images of I.N. from Spone. I.N. testified that upon learning of the messages, she became scared and afraid. **See** N.T., 3/23/22, at 304-305.

The above cited evidence directly contradicts Spone's suggestion that she was a concerned parent who had a legitimate purpose in sending the series of anonymous text messages. As the Commonwealth appropriately observes, "if [Spone] truly was acting as a concerned parent, there is simply no credible reason why she would not have communicated directly with the

other parents and coaches, with whom she was already familiar, without feeling the need to mask her identity." Commonwealth's Brief at 18.

These facts permitted the jury, sitting as the finder of fact, to discount Spone's claim of intending to have legitimate communication, and to conclude beyond a reasonable doubt that Spone had the intent to harass, annoy or alarm the victims when she communicated repeatedly in an anonymous manner through text messages. Therefore, the evidence is sufficient to establish that Spone committed the three crimes of harassment. Therefore, we find Spone's issue to be without merit.

In her concomitant sub-issue, Spone argues that her text messages could not constitute harassment because they were protected free speech under the First Amendment of the United States Constitution and Article 1 § 7 of the Pennsylvania Constitution. *See* Appellant's Brief at 43-48. Spone asserts that her text messages were protected because the messages "merely shared with parents and coaches what the students were doing on social media, especially where informing adults with authority over the students carries the social value of protecting minor athletes at the gym." *Id*. at 46.

Pennsylvania Rule of Appellate Procedure 302(a) provides that "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). Likewise, we have long held that claims not raised before the trial court are waived. "It is well established that trial judges must be given an opportunity to correct errors at the time they are made. [A]

party may not remain silent and afterwards complain of matters which, if erroneous, the court would have corrected." **Commonwealth v. Strunk**, 953 A.2d 577, 579 (Pa. Super. 2008) (citations omitted). **See also Commonwealth v. Lopata**, 754 A.2d 685, 689 (Pa. Super. 2000) ("A claim which has not been raised before the trial court cannot be raised for the first time on appeal." (citation omitted)). "Even issues of constitutional dimension cannot be raised for the first time on appeal." **Strunk**, 953 at 579 (citation omitted).

In addition, it is an appellant's obligation to demonstrate which appellate issues were preserved for review. Pa.R.A.P. 2117(c), 2119(e). "[I]t is not the responsibility of this Court to scour the record to prove that an appellant has raised an issue before the trial court, thereby preserving it for appellate review." **Commonwealth v. Baker**, 963 A.2d 495, 502 n.6 (Pa. Super. 2008) (citations omitted).

Upon review of the record, we agree with the Commonwealth that "[a]t no point below did [Spone] argue that her charges should be dismissed on First Amendment grounds, raise the First Amendment as part of her defense at trial, or argue in a post-sentence motion that her convictions must be vacated on First Amendment grounds." Commonwealth's Brief at 22. Consequently, we are left to conclude that Spone failed to preserve this issue for appellate review. Pa.R.A.P. 302(a); **Lopata**, 754 A.2d at 689.

However, to the extent that we would have addressed Spone's free speech claim, we observe that "it is well understood that the right of free speech is not absolute at all times and under all circumstances." *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571 (1942) (footnote omitted). "There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem." *Id*. at 571-72 (footnotes omitted). "Resort to epithets or personal abuse is not in any proper sense communication of information or opinion safeguarded by the Constitution, and its punishment as a criminal act would raise no question under that instrument." *Id*. at 572 (citation omitted).

In *Commonwealth v. Duncan*, 363 A.2d 803 (Pa. Super. 1976) we addressed the constitutionality of the harassment statute and made the following observation:

> With the enactment of 18 Pa.C.S.A. [§] 2709, our legislature has sought to prohibit such conduct, including speech, which is not Constitutionally protected and which is intended to alarm or seriously annoy another person. The purpose of the legislature, undoubtedly, was to extend to the individual the protections which have long been afforded the general public under disorderly conduct and breach of the peace statutes.

*Id*., 363 A.2d at 807.

Our Supreme Cout has explained, "The statute is not directed at the content of speech and is unrelated to the suppression of free expression. Rather, the statute focuses on the manner and means of communication and proscribes communications made with an intent to harass. By requiring an

intent to harass, the statute does not punish constitutionally - protected conduct[.]" **Commonwealth v. Hendrickson**, 724 A.2d 315, 318 (Pa. 1999). More recently, we observed that in reaching its decision, the **Hendrickson** Court noted "the state has a legitimate interest in preventing harassment and that the offense was directed at the harassing conduct rather than the speech itself." **Commonwealth v. Collins**, 286 A.3d 767, 776 (Pa. Super. 2022).

As the trial court aptly stated in its Rule 1925(a) opinion, "[Spone] was convicted [for] the harassing nature of her communications, not for the expression of ideas." Trial Court Opinion, 10/6/22, at 20. Had this issue been preserved, we would agree with the trial court's proper conclusion that Spone's convictions, which related to the nature of her communications, do not run afoul of her First Amendment right to freedom of speech.

In her second issue, Spone argues that the Commonwealth presented insufficient evidence to support her conviction of harassment concerning K.R. **See** Appellant's Brief at 48-52. In this sufficiency challenge, Spone contends that the communication regarding K.R. was a single contact and, therefore, was "insufficient to establish the requisite element of 'repeated' communication." **Id**. at 50. We disagree.

As discussed above, to convict Spone of harassment under Section 2709(a)(5), the Commonwealth was required to prove that she communicated repeatedly in an anonymous manner with the intent to harass, annoy or alarm. In reviewing this issue, the trial court noted that "despite [Spone's] position

that she only sent one text message to K.R.'s parents, there were in fact seven separate messages sent to [K.R.'s mother] during a period of slightly more than two and [one-]half minutes." Trial Court Opinion, 10/6/22, at 21. Spone has conceded the fact that her text communication with K.R.'s mother consisted of more than a single text message. Spone states, "K.R.'s mother received an anonymous test message on August 1, 2020, alerting her to her daughter's Tik Tok username, underage drinking, and references to drug use. Accompanying the text message were pictures of K.R. from K.R.'s Tik Tok account. The messages were sent over a period of two- and one-half minutes." Appellant's Brief at 49.

Our review of the record supports the conclusion that there were seven anonymous text communications sent by Spone to K.R.'s mother in approximately two and one-half minutes. **See** Commonwealth Exhibits C-6 & C-15. Contrary to Spone's assertions, this evidence was sufficient for the jury to conclude beyond a reasonable doubt that Spone sent seven anonymous text messages to K.R.'s mother.

Here, the fact that Spone sent seven repeated anonymous text messages was sufficient to support the instant conviction of harassment. The jury, sitting as finder of fact, chose to believe the evidence presented by the Commonwealth, and we will not substitute our judgment for that of the jury. Under the totality of the circumstances, the evidence presented at the trial, viewed in the light most favorable to the Commonwealth as the verdict winner,

establishes that Spone intended to harass, annoy or alarm another when she communicated repeatedly in an anonymous manner with K.R.'s mother. This evidence is sufficient to sustain Spone's conviction of harassment. Accordingly, her claim lacks merit.

The next set of issues presented by Spone offer allegations of due process violations. **See** Appellant's Brief at 52-68. Specifically, in her third issue Spone argues that she was deprived of her right to an impartial jury because of the media coverage surrounding the case. **See id**. at 52-61. Spone observes that her "arrest and prosecution made national and international headlines, from the New York Times to BBC." **Id**. at 55-56. Spone claims that "[t]he District Attorney took great pains to stir up an international media frenzy by calling a press conference where he repeatedly and in great detail described that the essence of this case was that [Spone] had 'deepfaked' videos of the victims in the case." **Id**. at 57 (citation omitted). Spone also alleges that the week before trial news about her case resumed with the announcement of a movie inspired by the case. **See id**. Spone posits that "[t]aken together, the national atmosphere fed by [the] District Attorney was so hostile and pervasive that [Spone's] Due Process rights were violated where she was deprived of her constitutionally protect right to an impartial jury." **Id**.

Pennsylvania Rule of Appellate Procedure 302(a) provides that "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). Likewise, we have long held that claims not

- 13 -

raised before the trial court are waived. "It is well established that trial judges must be given an opportunity to correct errors at the time they are made. [A] party may not remain silent and afterwards complain of matters which, if erroneous, the court would have corrected." *Commonwealth v. Strunk*, 953 A.2d 577, 579 (Pa. Super. 2008) (citations omitted). *See Commonwealth v. Lopata*, 754 A.2d 685, 689 (Pa. Super. 2000) ("A claim which has not been raised before the trial court cannot be raised for the first time on appeal."). In addition, it is an appellant's obligation to demonstrate which appellate issues were preserved for review. Pa.R.A.P. 2117(c), 2119(e).

Furthermore, Pa.R.A.P. 2119 addresses arguments in appellate briefs and references to the record, and provides, in relevant part, as follows:

> If reference is made to the pleadings, evidence, charge, opinion or order, or any other matter appearing in the record, the argument must set forth, in immediate connection therewith, or in a footnote thereto, a reference to the place in the record where the matter referred to appears ...

Pa.R.A.P. 2119(c). "When an allegation is unsupported [by] any citation to the record, such that this Court is prevented from assessing this issue and determining whether error exists, the allegation is waived for purposes of appeal." *Commonwealth v. Harris*, 979 A.2d 387, 393 (Pa. Super. 2009) (citing Pa.R.A.P. 2119(c)).

Concerning Spone's claim of due process violations, the trial court stated, "[t]his claim was raised for the first time in [Spone's] 1925(b) Concise Statement of Matters on Appeal and no specific record was made regarding

- 14 -

this issue and the matter was not briefed or argued in a formal manner." Trial Court Opinion, 10/6/22, at 22. More specifically, with regard to the question of the empaneling of an impartial jury, the trial court observed that Spone "did not raise or attempt to address this issue pre-trial or at trial. … Since issues such as media attention are typically dealt with through a Motion for a change of venue, a sequestered jury, or a change of venire, and since none of these were raised pre-trial or at trial, this [c]ourt fails to grasp how the issue of unfair media attention was to have been addressed." *Id*. at 23.

Spone's bald assertion regarding the impartiality of the jury lacks any supporting citation or proof in the record. In addition, she has not directed our attention to a place in the record where a proper objection to the empaneling of the jury had been made. As such, Spone has waived this claim.

Spone next presents two due process claims pertaining to the Commonwealth's decision to withdraw, just prior to trial, three charges of cyber harassment of a minor. *See* Appellant's Brief at 61-68. Again, we conclude that these issues are waived.

Spone initially claims that the Commonwealth, by waiting until the start of trial to withdraw charges, precipitated testimony from M.H. and M.H.'s mother suggesting that Spone had created fake videos and photographs of M.H. *See id*. at 61-63. Spone claims, "The false testimony regarding whether the videos and photographs must have been manufactured had a reasonable

probability of influencing the jury to believe [Spone] did not have intent of legitimate communication." ***Id***. at 63.

Again, we must determine whether Spone properly preserved the issue for our consideration. It is well settled in Pennsylvania that a party must make a timely and specific objection at trial in order to preserve an issue for appellate review. Pa.R.A.P. 302(a); ***see also Commonwealth v. Montalvo***, 641 A.2d 1176, 1185 (Pa. Super. 1994) (citation omitted) ("In order to preserve an issue for review, a party must make a timely and specific objection at trial"). Failure to do so results in waiver of that issue on appeal. ***See*** Pa.R.A.P. 302(a).

With respect to preserving challenges to the admission or exclusion of evidence, Pa.R.E. 103 addresses rulings on evidence and requires a contemporaneous objection in order to preserve a claim of error in the admission of evidence and provides, in relevant part, as follows:

> **(a) Preserving a Claim of Error.** A party may claim error in a ruling to admit or exclude evidence only:
>
> (1) if the ruling admits evidence, a party, on the record:
>
> (A) makes a timely objection, motion to strike, or motion *in limine*; and
>
> (B) states the specific ground, unless it was apparent from the context....

Pa.R.E. 103(a).

Our review of the record reflect that the Commonwealth presented testimony from M.H. and her mother expressing their belief that Spone had

- 16 -

created fake images of M.H. **See** N.T., 3/23/22, at 18-19, 177. However, Spone failed to make a timely and specific objection to the testimony at the time it was admitted into evidence. Accordingly, this issue challenging the admission of the testimony because it was allegedly triggered by the Commonwealth's late dismissal of particular criminal charges was not properly preserved by presenting the claim to the lower court in the first instance. Therefore, this issue is waived.

Spone further argues the Commonwealth's decision to dismiss three charges immediately before trial resulted in a due process violation because she suffered prejudice when she unnecessarily prepared a trial strategy and retained an unnecessary expert to combat the charges. **See** Appellant's Brief at 63-68. Spone claims that waiting for the first day of trial was by design because "the Commonwealth had known for a year [that the dismissed charges] were inapplicable in an effort to obtain a guilty plea." **Id**. at 66.

Again, a party must make a timely and specific objection at trial in order to preserve an issue for appellate review. Pa.R.A.P. 302(a); **see also Commonwealth v. Montalvo**, 641 A.2d 1176, 1185 (Pa. Super. 1994) (citation omitted) ("In order to preserve an issue for review, a party must make a timely and specific objection at trial"). Failure to do so results in waiver of that issue on appeal. **See** Pa.R.A.P. 302(a).

As the Commonwealth states in its brief:

At no point below did [Spone] object to the timing of the Commonwealth's withdrawal of her cyber harassment charges,

nor did [Spone] request a continuance of her trial to further prepare her defense to the remaining charges. See N.T. 3/21/2022, pp. 11-13. Absent any argument to the trial court that [Spone's] defense would be prejudicially hindered by the timing of the Commonwealth's withdrawal of her cyber harassment charges, [Spone] cannot, for the first time, argue the same on direct appeal.

Commonwealth's Brief at 45. Our review of the record confirms that Spone failed to present this issue to the trial court in the first instance, either through objection or another request for relief. We are an error correcting court and issues not raised in the lower court are waived and cannot be raised for the first time on appeal. *See* Pa.R.A.P. 302(a).

Spone last argues that the trial court impermissibly chilled her right to testify. *See* Appellant's Brief at 68-71. Specifically, Spone takes umbrage with the trial court advising her "that testifying would be 'fraught with danger' based on the risk of 'opening the door' to inadmissible testimony." *Id*. at 69. Spone alleges that the trial court's comment "was erroneous and influenced [her] decision whether to testify on her own behalf." *Id*.

Once more, upon review of the record, we must conclude that Spone failed to raise before the lower court the specific issue that the trial court improperly advised her regarding offering testimony on her own behalf. Instead, this claim has been raised for the first time on appeal, having never been presented to the trial court. Accordingly, we are constrained to conclude that Spone has waived this claim. *See* Pa.R.A.P. 302(a).

Finally, on July 10, 2023, Spone filed an application for post-submission communication pursuant to Pa.R.A.P. 2501, which directed this Court's attention to the United States Supreme Court's ruling in ***Counterman v. Colorado***, 600 U.S. ___ (2023), and requested "Leave of Court to transmit the Opinion to the Honorable Court." Application for Post-Submission Communication, 7/10/23, at 2. The Commonwealth opposed the application in an answer filed July 12, 2023.

Generally, we will accept an application for post-submission communication when there has been a change in the status of authority. Pa.R.A.P. 2501(b). No such change in authority has been suggested in Spone's application. Accordingly, we deny Spone's application because she has failed to demonstrate any basis under Rule 2501 that would permit such a post-submission communication.

Judgment of sentence affirmed. Application for post-submission communication denied.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/14/2023