**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DEVIN STEVEN GOTTWALT | : | |
| | : | |
| Appellant | : | No. 1449 MDA 2024 |

Appeal from the Judgment of Sentence Entered January 18, 2023
In the Court of Common Pleas of York County
Criminal Division at CP-67-CR-0001181-2021

BEFORE:  OLSON, J., LANE, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:        **FILED: JULY 24, 2025**

Devin Steven Gottwalt (Appellant) appeals *nunc pro tunc* from the judgment of sentence imposed after a jury convicted him of one count each of aggravated indecent assault of a child, aggravated indecent assault of a child less than 13 years old, and corruption of minors; and three counts of indecent assault of a child less than 13 years old.[1]  We affirm.

*CASE HISTORY*

Appellant's convictions arise from his sexual abuse of his girlfriend's daughter, K.C.  Prior to trial, the court conducted an *in camera* hearing and found K.C. competent to testify.  N.T. (Trial), 9/6/22, at 120-25.  K.C. was 11 years old at the time of trial.  *Id.* at 121.  She stated that she was "[n]ine or ten" when the abuse occurred.  *Id.* at 136.

---

[1] 18 Pa.C.S. §§ 3125(b), 3125(a)(7), 6301(a)(1)(ii), and 3126(a)(7), respectively

K.C.'s mother was Appellant's girlfriend.  K.C. lived with her father and step-mother, but would visit her mother every other weekend.  *Id.* at 133. K.C.'s mother lived with "Pap," who is mother's grandfather and K.C.'s great-grandfather, along with Appellant and K.C.'s younger step-brother.  *Id.* at 133, 144.  K.C. testified that the abuse occurred when her mother was at work and Pap and her step-brother were sleeping.  *Id.* at 135.

The trial court explained:

K.C. testified that Appellant was touching her inappropriately by rubbing her vagina with his fingers.  The touching occurred in K.C.'s mom's old room, her mom's new room, and the living room. The first instance of inappropriate touching that K.C. could recall occurred in the basement, where her mom's bedroom used to be located.  K.C. and Appellant were lying together in a bed, facing one another, and Appellant wanted K.C. to "go against him."  A subsequent event was when they were in the living room, [and Appellant] took K.C.'s hand and put it in his pants, rubbing up and down on his "middle part," which was described by K.C. as what Appellant uses to pee, and then Appellant stopped the touching and proceeded downstairs.  K.C. recounted a third unwanted encounter in what K.C. described as her mom's new room. Appellant was lying on the floor and rubbing K.C.'s back. Appellant then asked if he could touch K.C.'s butt and K.C. then proceeded to get up and go to the bathroom.  On that occasion, Appellant tried to touch K.C.'s buttocks.  K.C. described how, during this same instance, Appellant, who was facing K.C.'s back as they were lying on the floor, poked K.C.'s buttocks with his middle part.  ...

[K.C.'s step-mother] testified that on December 1, 2020, Michael Funk[, who she did not know,] came to [her] home [and told her "something was going on" with Appellant and K.C.  After speaking with K.C., she contacted the police].  Mr. Funk testified that he was visiting [K.C.'s mother] when K.C. approached her and, though K.C. did not specify that it involved her private parts, K.C. stated that she did not like Appellant's inappropriate touching…. K.C.'s mother, … however, testified that K.C. came up to her and stated that sometimes [she felt] uncomfortable around Appellant.

- 2 -

> K.C. did not say anything further and went about her business. [K.C.'s mother] further testified that, later, [she] informed Mr. Funk of K.C.'s, as [she] characterized it, oblique statement[,] and that when K.C. joined them, Mr. Funk [asked] K.C. about Appellant touching [her].
>
> Appellant resided at Pap's house at various times. Appellant first moved into Pap's house in 2013 and stayed until 2014. In December of 2019, when Appellant's grandmother obtained a Protection From Abuse order against Appellant, [he] moved back to … Pap's home and [he] stayed there until the end of 2020.

Trial Court Opinion (TCO), 1/7/25, at 5-7 (footnotes and citations to trial testimony omitted).

The Commonwealth filed criminal charges against Appellant on January 19, 2021.[2] On February 9, 2022, the Commonwealth filed a motion to introduce out-of-court statements by K.C. pursuant to the Tender Years Hearsay Act. *See* 42 Pa.C.S. § 5985.1 (specifying when out-of-court statements by "a child victim … 16 years of age or under" are admissible in court). The Commonwealth sought to introduce K.C.'s statements to a forensic interviewer at the York County Children's Advocacy Center.

The trial court scheduled a hearing on the motion for April 27, 2022. The parties appeared for the hearing, but before it began, Appellant "absconded from court, at which point a bench warrant was issued and bail was revoked."[3] N.T. (June Pre-Trial Hearing), 6/24/22, at 2. The hearing was

---

[2] The Commonwealth originally charged Appellant with nine offenses, but withdrew three of the indecent assault charges (Counts 7-9) prior to trial.

[3] The court explained that after Appellant's counsel advised him of the Commonwealth's motion to revoke bail, Appellant "indicated to counsel he was
*(Footnote Continued Next Page)*

continued to June 24, 2022, when Appellant's counsel relayed that Appellant would not oppose the motion because the Commonwealth was "entitled to" introduce the statements. *Id.* at 3. Counsel stated that Appellant agreed to the introduction of the statements, "with the understanding that the victim would also testify and be subject to cross-examination[,] as well as the interviewer." *Id.*

Trial was held from September 6–9, 2022. The Commonwealth presented testimony from K.C.; Michael Funk; Pap; K.C.'s step-mother; forensic nursing examiner, Kelly Grimes; police detective, Chad Moyer; counseling and advocacy center director, Amber Crawford-Wagman; and forensic interviewer, Lauren Carter. Appellant testified in his defense and presented testimony from K.C.'s mother. In response, the Commonwealth presented rebuttal testimony from Pap and three police officers: Thomas Wales, John Lawton, and Daniel Klinedinst. Appellant recalled Detective Moyer.

The jury found Appellant guilty of all charges. On January 18, 2023, the trial court sentenced Appellant to an aggregate 10–20 years of incarceration, followed by five years of probation. The court did not find Appellant to be a sexually violent predator.

---

going to use the restroom. He did not return. The blue shirt that he was wearing was found on the floor in the corner." N.T. (April Pre-Trial Hearing), 4/27/22, at 4.

Appellant filed a notice of appeal *nunc pro tunc*, followed by a court-ordered Pa.R.A.P. 1925(b) concise statement. **See** TCO at 2-4 (recounting the procedural missteps and delay that preceded the reinstatement of Appellant's direct appeal rights).

Appellant presents three questions for our review:

> I. Whether the trial court committed an error by finding that K.C. was competent to testify as a witness even though she did not sufficiently understand the duty to tell the truth as required under Pa.R.E. 601?
>
> II. Whether the trial court committed an error by not instructing the jury to disregard K.C.'s entire testimony because K.C.'s testimony was unsworn?
>
> III. Whether the trial court committed an error by not admitting certain statements during [K.C.'s mother's] testimony, [and] regarding them as hearsay when they were not?

Appellant's Brief at 5.

*DISCUSSION*

*I.      Witness competency*

In his first issue, Appellant claims the trial court "erred in finding K.C. was competent to testify as a witness, even though she did not understand the duty to tell the truth as required under Pa.R.E. 601." **Id.** at 15. Rule 601 provides that a person is "incompetent to testify if the court finds[,] because of mental condition or immaturity[,] the person … does not sufficiently understand the duty to tell the truth." Pa.R.E. 601(b)(4). According to Appellant:

> While K.C. was eleven years old and was in the sixth grade at the time of testimony[,] when [Appellant's counsel] questioned K.C.

- 5 -

if [she] knew the difference between telling the whole truth and half-truth, K.C. responded by stating "kind of." *See* N.T. [(Trial) at] 123. When [Appellant's] counsel asked if K.C. thought someone can get in trouble if they only tell a half-truth, K.C. responded "maybe." *Id.* at 124. When asked why "maybe," K.C. went on to testify that "because you're not saying the full truth, and they can't like – they can't – I forget what I was going to say. They don't really know what is going on." *Id.*

… [T]he testimony from K.C. shows [she] did not completely and fully understand the difference between the truth and a lie. K.C. being unable to distinguish between … the whole truth and half-truth is indicative of incompetency. This directly impacts [*sic*] Rule 601[,] as a person is incompetent to testify if the court finds that because of immaturity the person does not sufficiently understand the duty to tell the truth. As K.C. failed to do this, the trial court committed an abuse of discretion in finding K.C. to be a competent witness who understood the duty to tell the truth.

*Id.* at 19-20.

Appellant's argument lacks merit. First, the issue is waived. As the Commonwealth states:

[Appellant] made no objection at or before trial to the Commonwealth offering [the] testimony, nor was such an objection made after [K.C.] was examined as to her ability to speak the truth. Furthermore, [Appellant] had, and took advantage of, the opportunity for cross-examination. When the trial court made its finding of competency, [Appellant] made no objection to preserve a claim.

Commonwealth's Brief at i (citations to trial testimony omitted).

Appellant first raised the issue of K.C.'s competency in his Rule 1925(b) statement. He did not object during the *in camera* hearing or when the trial court decided that K.C. was competent to testify. *See* N.T. (Trial) at 120-25. "Issues not raised in the trial court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). This Court has held repeatedly that

a party "must make a timely and specific objection at trial to preserve an issue for appellate review." **Commonwealth v. Spone**, 305 A.3d 602, 612 (Pa. Super. 2023) (citations omitted). Therefore, Appellant waived his challenge to the trial court's competency determination.

We also agree with the Commonwealth that even if preserved, the issue would fail for lack of merit. Commonwealth's Brief at i. A trial court must conduct a competency hearing for any witness under the age of fourteen. **Commonwealth v. Moore**, 980 A.2d 647, 651 (Pa. Super. 2009). Pertinently:

> [C]ompetency of a witness is presumed, and the burden falls on the objecting party to demonstrate incompetency. When the witness is under fourteen years of age, there must be a searching judicial inquiry as to mental capacity, but discretion nonetheless resides in the trial judge to make the ultimate decision as to competency. In making its determination, the court must inquire whether the child possesses: (1) such capacity to communicate, including as it does both an ability to understand questions and to frame and express intelligent answers, (2) mental capacity to observe the occurrence itself and the capacity of remembering what it is that she is called to testify about and (3) a consciousness of the duty to speak the truth.

**Commonwealth v. Hunzer**, 868 A.2d 498, 507 (Pa. Super. 2005) (citation omitted). An appellate court should not interfere with the trial court's competency ruling absent an abuse of discretion. **Id.**

Here, the trial court conducted an "on-the-record judicial inquiry into K.C.'s mental capacity and her understanding between truth and falsehood." TCO at 9; **id.** at 9-13 (trial court's quoting K.C.'s answers to questions from the court, the Commonwealth and Appellant's counsel). Appellant emphasizes

K.C.'s testimony about "a half-truth," which would "maybe" get someone in trouble. Appellant's Brief at 19. However, Appellant disregards K.C.'s accurate and appropriate answers to the court's preliminary questions about her age, birthday, and school. N.T. (Trial) at 121-22. Appellant further disregards K.C.'s testimony that she knew the difference between the truth and a lie, that she promised to tell the truth, and that it is "[g]ood to tell the truth." *Id.* at 122. The trial court concluded that K.C.'s "understanding of the difference between the truth and falsehood and her understanding of her duty to tell the truth were apparent." TCO at 13. In the absence of waiver, we would not find that the court abused its discretion.

*II. Witness oath and affirmation*

In his second issue, Appellant claims the trial court erred by "not instructing the jury to disregard K.C.'s testimony as it was unsworn." Appellant's Brief at 15. Appellant asserts that his convictions should be reversed and his judgment of sentence vacated because "the record is devoid of [K.C. receiving] what 42 Pa.C.S. § 5901 sets forth as a proper oath or oath of affirmation." *Id.* at 24-25.

Section 5901 of the Judicial Code provides for a witness to take an oath before testifying, or, instead of an oath, affirm their testimony, "with the same effect and consequences." 42 Pa.C.S. § 5901(a)-(b). In addition, Rule of Evidence 603 — which Appellant does not mention — requires that "[b]efore testifying, a witness must give an oath or affirmation to testify truthfully. It

must be in a form designed to impress that duty on the witness's conscience." Pa.R.E. 603.

The Commonwealth states that Appellant's argument is "specious and contravenes the plain facts of record." Commonwealth's Brief at q. Preliminarily, however, the Commonwealth argues that the issue is waived. *Id.* at m-n. Again, we agree. Like his first issue, Appellant raised this issue for the first time in his Rule 1925(b) statement. Appellant never made a timely and specific objection to preserve the claim. *Spone*, 305 A.3d at 612. Appellant's omission results in waiver.[4]

> ### III. *Exclusion of testimony as hearsay*

In his third issue, Appellant claims the trial court erred by excluding statements by K.C.'s mother and regarding the statements as hearsay. Appellant's argument consists of three paragraphs. Appellant's Brief at 25-26. In the first two paragraphs, Appellant discusses general hearsay principles. *Id.* In the third paragraph, Appellant argues:

> [The] testimony was not being offered for the truth of the matter asserted. Rather, it was merely testimony of what [K.C.'s mother] observed K.C.'s reaction [to be] when [Michael Funk] asked if Appellant touched her. [K.C.'s mother] described K.C. as acting goofy, smirk[ing] as a kind of laugh, and that she did not really provide an answer…. *See* N.T. [(Trial) at] 391-94. [Appellant's]

---

[4] The trial court explained that "K.C.'s testimony was adequately sworn." TCO at 17. The court referenced the *in camera* hearing, and noted that "K.C.'s oath tracked with the [c]ourt's need to probe K.C.'s competency." *Id.* at 16. In addition, the court quoted its questioning of K.C. in front of the jury, prior to K.C. testifying, about her "promise to tell the whole truth." *Id.* at 15 (citing N.T. (Trial) at 129-30)).

counsel was not attempting to use this response to prove or
disprove whether Appellant touched K.C.

*Id.* at 26.

The Commonwealth stresses that Appellant "cites no relevant law other
than the definition of hearsay, and does not address the trial court's finding
that the evidence also constituted an impermissible credibility judgment about
another witness, which is the province of the jury." Commonwealth's Brief at
q. The Commonwealth states that Appellant "ignores the trial court's
explanation of its rationale, both at trial and on appeal." *Id.* at s (citations
omitted). The Commonwealth is correct.

The trial court explained that the "only statement excluded by this
[c]ourt related to K.C.'s mother['s] testimony as to her opinion that began to
construe K.C.'s revelation. This opinion was clearly trending towards a
credibility judgment by [K.C.'s mother] of K.C.'s accusations against
Appellant." TCO at 19. The court noted that the testimony "does not fall
squarely into the definition of hearsay; however, [it] was properly excluded."
*Id.* at 20.

K.C.'s mother made the statement on direct examination by Appellant's
counsel, who questioned her as to when K.C. "said something about" Appellant
touching her. N.T. (Trial) at 389. Appellant's counsel asked:

Q. When was that?

A. It was either September or October [of 2020]. She had come
to me one night. … [S]he had come to me and said, Mom,
sometimes I feel uncomfortable around [Appellant].

Q. Did she say anything more than that?

- 10 -

A. No.

Q. Did you ask her about it?

A. No. I just said okay, and she went about her business.

Q. All right. After she said that, what did you do…?

A. It was probably an hour, maybe less than an hour, and I was sitting outside, and Mike [Funk] was out there with me, and it was just me and Mike. …

Q. … Was there any mention of any [Appellant] touching [K.C.]?

A. Not at that point.

Q. Okay. Go ahead.

A. Then it was probably a little bit later that me and Mike were sitting outside smoking a cigarette. [K.C.] had come out maybe five minutes into us smoking, and she stood beside me, and I forget if anything was brought up before that, but I just remember Mike had asked her is [Appellant] touching you? Did he make you touch him? This and that.

Q. Is that the first time you heard about touching?

A. Yes. I never asked my daughter questions like that.

Q. … Now, when all that was being done, what was [K.C.] doing?

A. She just stood there, and to me, I don't know how to do it right, but when you smirk but laugh kind of. To me, I took it as --

[COMMONWEALTH]: I'm going to object at this point. Can we talk at sidebar?

*Id.* at 389-91.

The trial court and counsel engaged in a lengthy discussion at sidebar.

*See id.* at 391-404. The discussion included the following exchange:

[COMMONWEALTH]: This is so improper.

[APPELLANT'S COUNSEL]: How is it so improper?

[COMMONWEALTH]: Because you're asking a witness to testify to the credibility of a victim.

[APPELLANT'S COUNSEL]: No, I'm not. I'm taking [*sic*] how she interpreted her response.

THE COURT: I agree. I don't think it's appropriate for her. That's for the jury to determine [K.C.'s] credibility.

*Id.* at 393.

The trial court advised counsel that K.C.'s mother "can testify to what she observed[, but s]he can't interpret … what she observed." *Id.* at 394. The court subsequently opined:

> K.C.'s mother's testimony touched upon a particular area of concern for courts in which witnesses run the risk of trespassing upon matters that are, ultimately, the domain of the factfinder. "[I]t is for the fact-finder to make credibility determinations, and the finder of fact may believe all, part, or none of a witness's testimony." *Commonwealth v. Lee*, 956 A.2d 1024, 1029 (Pa. Super. 2008) (quoting *Commonwealth v. Thompson*, 934 A.2d 1281, 1285 (Pa. Super. 2007) (citation omitted in original), *appeal denied*, 946 A.2d 687 (Pa. 2008)). And, the admissibility of evidence is addressed to the sound discretion of the trial court, and this decision may be reversed only upon a showing of an abuse of discretion.
>
> The crux of the matter is whether or not K.C.'s mother should have been permitted to impugn K.C.'s accusations against Appellant.

TCO at 21 (footnote and some citations omitted).

As the trial court recognized, we review evidentiary rulings for an abuse of discretion. *Commonwealth v. Luster*, 234 A.3d 836, 838 (Pa. Super. 2020). Here, the court excluded testimony where "defense counsel's question elicited a response from K.C.'s mother as to the veracity of K.C.'s accusations against Appellant." TCO at 23. The court did not abuse its discretion.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>07/24/2025</u>