J-S14015-25

2025 PA super 174

IN RE: ADOPTION OF E.M.I., A MINOR

APPEAL OF: B.H.I., FATHER

: IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
:
:
:
:
:
:
:
:
:
: No. 359 EDA 2025

Appeal from the Decree Entered January 10, 2025
In the Court of Common Pleas of Montgomery County Orphans' Court at
No(s): 2024-A0116

BEFORE: DUBOW, J., BECK, J., and STEVENS, P.J.E.[*]

OPINION BY DUBOW, J.:                                    **FILED AUGUST 13, 2025**

Appellant, B.H.I. ("Father"), appeals from the January 10, 2025 decree entered in the Montgomery County Court of Common Pleas that terminated his parental rights to five-year-old E.M.I. ("Child"). Father solely challenges the trial court's order that approved providing notice of the termination hearing to Father by publication in a local newspaper ("Service by Publication Order"). Upon review, we affirm.

A detailed recitation of the factual and procedural history is unnecessary to our disposition. On July 17, 2024, the Montgomery County Office of Children and Youth ("the Agency") filed a petition to terminate Father's parental rights to Child, averring, *inter alia*, Father's ongoing drug abuse. The trial court appointed Kyle Felty, Esq., to serve as both guardian *ad litem* and

_____

[*] Former Justice specially assigned to the Superior Court.

legal counsel after finding that there was no conflict in Attorney Felty serving in the dual role.

On September 17, 2024, the Agency filed a motion regarding the procedure it should use to serve Father with notice of the termination hearing. In particular, the Agency requested that the court authorize it to notify Father of the termination hearing by publishing the notice in a local Berks County newspaper, The Reading Eagle. The motion averred that the Agency had conducted a reasonable investigation into the location of Father and concluded that his last known address at 8 Willow Street, Birdsboro, in Berks County, where Father lived following the Child's birth, was the most reliable information that it had regarding Father's whereabouts. Motion, 9/14/24, at ¶¶ 8-12. Father's counsel did not file a response.

On September 18, 2024, the trial court granted the Agency's motion and issued the Service by Publication Order authorizing the Agency to serve Father with notice of the termination hearing by publishing the notice in The Reading Eagle. Father's counsel did not file a motion for reconsideration. On December 6, 2024, the Agency published notice of the January 9, 2025 termination hearing in The Reading Eagle.

On January 9, 2025, the trial court held a termination of parental rights hearing. Father failed to appear. Father's counsel, for the first time, challenged the facts that the trial court relied upon in issuing its Service by Publication Order. Father's counsel argued that the Agency received reliable information in September of 2024 that Father was living in a tent in Pottstown

in Montgomery County and, thus, the trial court erred in not authorizing service by publication in a Montgomery County newspaper. The trial court overruled counsel's objection. After a hearing, the trial court terminated Father's parental rights pursuant to 23 Pa.C.S. §§ 2511(a) and (b).

Father timely appealed. Father filed a Pa.R.A.P. 1925(a) statement. The trial court filed an excerpt from the January 9, 2025 hearing notes of testimony in lieu of a Rule 1925(a) opinion.

Father raises a sole issue for our review: "Whether the Agency properly served notice by publication upon [Father] where it published a hearing notice in an area in which the birth father was not known to reside?" Father's Br. at 4.

In cases involving involuntary termination of parental rights, this Court's review is limited to determining whether the trial court's determination is supported by competent evidence. *In re Adoption of L.A.K.*, 265 A.3d 580, 591 (Pa. 2021). "When applying this standard of review, an appellate court must accept the findings of fact and credibility determinations of the trial court if they are supported by evidence of record. Where the trial court's factual findings are supported by the evidence, an appellate court may not disturb the trial court's ruling unless it has discerned an error of law or abuse of discretion." *Id.*

The "termination of parental rights implicates a parent's Fourteenth Amendment right to due process." *In Interest of A.N.P.*, 155 A.3d 55, 66 (Pa. Super. 2017). "Due process requires . . . adequate notice, an

- 3 -

opportunity to be heard, and the chance to defend oneself in an impartial tribunal having jurisdiction over the matter." *Id.* (citation and some punctuation omitted). Although "[d]ue process is flexible and calls for such procedural protections as the situation demands[,]" this Court is "unwilling to allow the termination of parental rights . . . without strict compliance with the procedures set forth by the Legislature[.]" *Id.* at 66, 68 (citations and some punctuation omitted). "As in all civil cases, the petitioner . . . bears the burden to prove proper service by its affirmative acts." *In re K.B.*, 763 A.2d 436, 439 (Pa. Super. 2000).

Section 2513 of the Adoption Act addresses the methods by which an Agency may provide notice of the involuntary termination of parental rights hearing and provides that the Agency may serve a parent by personal service, registered mail or other means required by the court:

> **(a) Time**.--The court shall fix a time for hearing on a petition filed under section 2512 (relating to petition for involuntary termination) which shall be not less than ten days after filing of the petition.
>
> **(b) Notice**.--At least ten days' notice shall be given to the parent or parents ... whose rights are to be terminated, by personal service or by registered mail to his or their last known address or by such other means as the court may require.

23 Pa.C.S. § 2513(a)-(b).

In particular, Pennsylvania Orphans' Court Rule 15.4 authorizes a trial court to permit an agency to provide notice of a termination hearing by publication when, after a reasonable investigation, a parent's whereabouts is still unknown. This provision provides, in pertinent part:

- 4 -

> If service cannot be obtained upon the person whose parental rights are sought to be terminated either because service is refused or unsuccessful and no alternative service is directed by the court or **because the person's identity or whereabouts are unknown after reasonable investigation, then notice by publication shall be given as directed by the court, after a motion in accordance with Pa.R.C.P. [] 430(a) and upon a finding by the court that a reasonable investigation was made**.

Pa.O.C.R. 15.4(b)(4) (emphasis added). The Rule specifies the content requirements of the notice by publication and provides, "[p]ublication shall occur once in a newspaper of general circulation for the county where the birth parent whose rights are sought to be terminated resides, or if not known, the place where the child was conceived." *Id.* at 15.4(b)(4)(C).

Similarly, Pennsylvania Rule of Civil Procedure 430 provides that "[i]f service cannot be made under the applicable rule the plaintiff may move the court for a special order directing the method of service." Pa.R.Civ.P. 430(a). "[A] trial court may not authorize alternative service under Rule 430 until there is proof that a good faith effort has been made to effectuate service under normal methods." *Chappell v. Powell*, 303 A.3d 507, 513 (Pa. Super. 2023) (citation and internal quotation marks omitted). Accordingly, "[t]he motion shall be accompanied by an affidavit stating the nature and extent of the investigation which has been made to determine the whereabouts of the defendant and the reasons why service cannot be made." Pa.R.C.P. 430(a). Thus, before authorizing service by publication of the notice of a termination hearing, the trial court must find that the Agency conducted a reasonable

investigation or made a good faith effort into locating the whereabouts of a parent.

As an initial matter, Father failed to preserve this issue for our review. If a party fails to respond to or contest a motion that results in a court order, it may lead to a waiver of any challenges to that order on appeal. **See Baranowski v. Am. Multi-Cinema, Inc.**, 688 A.2d 207, 209 (Pa. Super. 1997) (holding that appellant's failure to contest or respond to a motion for sanctions resulted in waiver of his arguments on appeal regarding the imposition of the sanctions or the severity of the sanctions); **Meyer-Chatfield Corp. v. Bank Fin. Servs. Grp.**, 143 A.3d 930, 939 (Pa. Super. 2016) (holding that because appellants failed to answer motion to compel, they waived any objection to the production of privileged materials). "It is well established that trial judges must be given an opportunity to correct errors at the time they are made. A party may not remain silent and afterwards complain of matters which, if erroneous, the court would have corrected." **Commonwealth v. Spone**, 305 A.3d 602, 608 (Pa. Super. 2023) (citation omitted). "To hold otherwise encourages [] counsel to sit by silently without calling errors to the trial court's attention[.]" **Commonwealth v. Edmondson**, 718 A.2d 751, 753 (Pa. 1998).

Here, Father's counsel did not respond to the motion to serve Father by publication and waited until the termination hearing—after the Agency had complied with the trial court's Service by Publication Order—to challenge the factual basis on which the trial court based its Service by Publication Order.

Because Father failed to raise a challenge to the Service by Publication Order at a time when the trial court could have corrected any alleged error, we conclude that Father's counsel has waived any challenge to the Service by Publication Order.[1]

Even if Father had challenged the factual basis for the Service by Publication Order in a timely matter, we would still find that the trial court did not err. Father avers that the Agency did not make a good faith effort to locate him prior to the termination hearing. Father's Br. at 10. Specifically, Father alleges that the Agency disregarded information that Father was living in a tent in Pottstown, which is in Montgomery County, and, therefore, the trial court should have authorized the publication of notice of the termination hearing in a newspaper in Montgomery County rather than Berks County. *Id.* We disagree.

The trial court properly found that the Agency followed the requirements of both Orphans' Court Rule 15.4(b)(4) and Rule of Civil Procedure 430(a). The Agency included in its motion the details of the reasonable investigation that it conducted to locate Father. The investigation did not uncover Father's most recent address and, therefore, the Agency requested to serve notice of the termination hearing by publication at Father's last known address of 8 Willow Street, Birdsboro, in Berks County. Motion, 9/17/24, at ¶ 1-12.

_____

[1] We note that Father's counsel does not challenge the Agency's compliance with the Service by Publication Order; only the factual basis for the trial court issuing it.

- 7 -

Additionally, during the termination hearing, the Agency social worker testified about the Agency's efforts to locate Father, including sending multiple letters to Father's last known address, contacting Father's mother ("Paternal Grandmother"), making several unannounced visits to Paternal Grandmother's home, speaking to various family members, and asking Child's mother ("Mother") for information. N.T. Hr'g, 1/9/25, at 42-44. The Agency social worker further testified that she was only able to make contact with Father once, which occurred at Paternal Grandmother's home at 8 Willow Street in January 2024, but Father refused to speak with her. *Id.* at 42-43. The Agency social worker, however, confirmed that she had received information from another family member in September of 2024 that Father and Mother may be living in a tent together in Pottstown. *Id.* at 55.

Based on all the above, the trial court confirmed that it had properly authorized the Agency to serve Father with notice of the termination hearing by publication in a Berks County newspaper. Father's argument is based on the unsupported allegation that someone told the social worker that Father **may** have been living in a tent in Montgomery County. Even if Father had not waived his challenge to the method of service by failing to respond to the motion to serve by publication, the record supports the trial court's finding that the Agency complied with Orphans' Court Rule 15.4 and Pa.R.Civ.Pro. 403(a) when it requested that it serve Father by publication.

Decree affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>8/13/2025</u>