J-S23030-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| NIKOLE K. COLE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRADFORD JEREMY COLE | : | |
| | : | |
| Appellant | : | No. 2506 EDA 2024 |

Appeal from the Judgment of Sentence Entered April 8, 2024
In the Court of Common Pleas of Monroe County Civil Division at No(s):
004823-CV-2022

BEFORE:  STABILE, J., MURRAY, J., and SULLIVAN, J.

MEMORANDUM BY MURRAY, J.:  **FILED AUGUST 4, 2025**

Bradford Jeremy Cole (Appellant) appeals, *nunc pro tunc*, from the judgment of sentence entered after the trial court found him in indirect criminal contempt of a Protection From Abuse[1] (PFA) order obtained by Nikole K. Cole (Nikole); sentenced Appellant to six months' incarceration; and extended the PFA order.  Appellant argues the contempt finding was not supported by the record.  After careful review, we affirm.

Appellant and Nikole are ex-spouses, who have been engaged in PFA proceedings[2] since 2022.  The trial court detailed the relevant history as follows:

---

[1] 23 Pa.C.S.A. §§ 6101-6122.

[2] The Honorable Margherita Patti Worthington presided over the parties' PFA proceedings.

The original PFA petition was filed [by Nikole] on August 23, 2022. A temporary PFA order was entered the next day. On August 29, 2022, a final … PFA [order] was entered for a period of one year after Appellant, though duly served, failed to appear at the hearing. [The final PFA order prohibited Appellant from contacting Nikole through any means, and from abusing, harassing, stalking, threatening, or attempting or threatening to use physical force against Nikole.] A total of three petitions for contempt were filed by the Monroe County District Attorney's Office between September 6th and 7th, 2022. Another petition for contempt was filed on November 22, 2022. The petitions were withdrawn by the Commonwealth on February 27, 2023. Yet another petition for contempt was filed on June 21, 2023, but was withdrawn by [the] Commonwealth the next day. Additional petitions for contempt were filed on July 17, 2023; August 7, 2023; September 5, 2023; and September 11, 2023.[FN1]

---

[FN1] Two petitions for contempt were filed on this date.

---

On September 22, 2023, a hearing was held on the various petitions for contempt filed until that point. Appellant was incarcerated for unknown reasons and participated via Zoom. Appellant was found in contempt of the PFA [order] at that time. Appellant was ordered to pay the costs of the proceedings and to remove all of his belongings from [Nikole's] home within thirty days of his release from incarceration. The PFA order was also extended until September 22, 2026.

Petitions for contempt were filed again on November 29, 2023, and January 11, 2024. [The trial court conducted a hearing on the November 2023 and January 2024 contempt petitions on April 8, 2024]. Appellant appeared at the hearing via Zoom from the Monroe County Correctional Facility[, and he was represented by counsel]. … [FN2] …

---

[FN2] At the time of the contempt hearing, Appellant was already incarcerated on pending charges for attempted burglary, attempted criminal trespass, and two counts of stalking [at trial court docket number CP-45-CR-0000587-2024]. [**Nikole**] **was the victim in the criminal case.** [A jury convicted Appellant] of

all four charges on September 24, 2024.  Appellant is currently serving a period of incarceration in that case.

---

> **The common thread between all of the contempt pettions are repeated calls, texts, and emails to** [**Nikole**]**, her friends, family, and work, alleging that** [**Nikole**] **is the victim of a prostitution ring being run out of a local gym and that Appellant is the only one who can save her.**  At the April 8, 2024, [hearing,] the Commonwealth presented evidence that [Nikole] had received a volume of emails from three separate email accounts[,] all registered under Appellant's name, that contained the same allegations.

Trial Court Opinion, 1/6/25, at 1-2 (paragraph breaks and emphasis added; some capitalization modified).

At the close of the hearing, the trial court found Appellant in contempt of the PFA order.  The trial court sentenced Appellant to 6 months' incarceration, ordered Appellant to pay the costs of the proceedings within 90 days following his release from incarceration, and directed Appellant to undergo a mental health evaluation and follow all treatment recommendations.  Further, the trial court extended the underlying PFA order until September 22, 2029.  Prior to the close of the hearing, Appellant promptly asked the court how to appeal from the contempt order, and the trial court explained Appellant's direct appeal rights.

Appellant did not file a timely direct appeal.  On May 15, 2024, Appellant filed a *pro se* petition under the Post Conviction Collateral Relief Act (PCRA),[3]

---

[3] 42 Pa.C.S.A. §§ 9541-9546.

claiming, *inter alia*, his public defender counsel failed to file a requested appeal on his behalf. The PCRA court appointed Appellant counsel. PCRA counsel filed a motion for leave to withdraw from representation under **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988), and **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*), which the PCRA court denied. On August 19, 2024, the PCRA court granted Appellant's petition and reinstated his direct appeal rights.

On September 18, 2024, Appellant filed a direct appeal, *nunc pro tunc*.[4] On the same date, the trial court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal within 21 days. Appellant failed to do so.[5] On February 12, 2025, appellate counsel, citing a "breakdown in communication," filed in this Court a motion for remand in order to comply with the concise statement order. Motion for Remand, 2/12/25. This Court granted the motion and remanded the matter for Appellant to file a Rule 1925(b) concise statement. Appellant subsequently filed a supplemental

---

[4] Appellant filed an additional *pro se* PCRA petition on December 3, 2024, accusing PCRA counsel of "throwing away [his] appeal." PCRA Petition, 12/3/24, at 3. The PCRA court issued Pa.R.Crim.P. 907 notice of its intention to dismiss Appellant's petition without a hearing. It is unclear from the certified record whether the court issued a final dismissal order.

[5] On January 6, 2025, Judge Worthington filed a Rule 1925(a) opinion, stating she was "unable to address any allegations of error without a concise statement...." Trial Court Opinion, 1/6/25, at 3.

record including his Rule 1925(b) concise statement. The trial court filed a Rule 1925(a) statement.[6]

Appellant raises the following issue for review: "Whether the trial court erred when it found Appellant to be in contempt of the [PFA Order] based on insufficient evidence?" Appellant's Brief at 5 (some capitalization modified).

Appellant asserts the trial court improperly relied on Nikole's "insistence that she knew Appellant personally had sent the emails[.]" *Id.* at 10-11. Appellant claims Nikole's testimony was insufficient to authenticate the emails she received. *Id.* at 12. Appellant points out that, by Nikole's own admission, "plenty of people knew about the subjects contained in the emails." *Id.* at 15.

Instantly, the District Attorney's Office filed a petition for contempt on November 29, 2023, and January 11, 2024, attaching thereto the related indirect criminal contempt affidavits supplied by Nikole.

"Where a PFA order is involved, an indirect criminal contempt charge is designed to seek punishment for violation of the protective order." *Commonwealth v. Brumbaugh*, 932 A.2d 108, 110 (Pa. Super. 2007)

---

[6] In the Rule 1925(a) statement, the Honorable Jennifer Harlacher Sibum noted that Judge Worthington had retired, indicated that Judge Worthington had adequately placed the reasons for her finding on the record, and requested that this Court affirm the contempt finding. *See* Rule 1925(a) Statement, 3/21/25.

(citation omitted). To establish indirect criminal contempt, the Commonwealth must prove the following elements:

1. The court's order or decree must be definite, clear, specific, and leave no doubt or uncertainty in the mind of the person to whom it was addressed of the conduct prohibited;

2. The contemnor must have had notice of the specific order or decree;

3. The act constituting the violation must have been volitional; and

4. The contemnor must have acted with wrongful intent.

*Shaner v. Harriman*, 189 A.3d 1088, 1090 (Pa. Super. 2018) (citation omitted).

Rather than addressing the elements of indirect criminal contempt, Appellant contends the Commonwealth failed to establish his identity as the perpetrator through proper authentication of the proffered emails. Accordingly, though framed as a sufficiency challenge, Appellant's claim is more properly viewed as a challenge to the trial court's admission of the email evidence.[7]

_____

[7] Appellant's attempt to disguise his evidentiary challenge as a sufficiency challenge is unavailing. Appellant's argument includes no mention of the elements of an indirect criminal contempt finding. Appellant does not dispute the specificity of the governing PFA order or that he had notice of the order. Nor does Appellant dispute that the challenged email communications would be considered a violation of the PFA order. Indeed, the only citations in Appellant's argument relate to the admission of digital evidence.

"In general, we review the propriety of a PFA order for an abuse of discretion or an error of law." ***Trout v. Strube***, 97 A.3d 387, 389 (Pa. Super. 2014). Additionally,

> [t]he admission of evidence is committed to the sound discretion of the trial court, and a trial court's ruling regarding the admission of evidence will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous.

***Commonwealth v. Mangel***, 181 A.3d 1154, 1158 (Pa. Super. 2018) (citation omitted).

The authentication of digital evidence, including the emails at issue herein, is governed by Pa.R.E. 901:

> **Rule 901. Authenticating or Identifying Evidence**
>
> **(a) In General.** Unless stipulated, to satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.
>
> **(b) Examples.** …
>
> * * *
>
> (11) *Digital Evidence.* To connect digital evidence with a person or entity:
>
>> (A) direct evidence such as testimony of a person with personal knowledge; or
>>
>> (B) circumstantial evidence such as:
>>
>>> (i) identifying content; or
>>>
>>> (ii) proof of ownership, possession, control, or access to a device or account at the relevant time when corroborated by circumstances indicating authorship.

- 7 -

Pa.R.E. 901(a), (b)(11). The comment to Rule 901(b)(11) further states, in relevant part, as follows:

> "Digital evidence," as used in this rule, is intended to include a communication, statement, or image existing in an electronic medium. This includes emails, text messages, social media postings, and images. The rule illustrates the manner in which digital evidence may be attributed to the author. **The proponent of digital evidence is not required to prove that no one else could be the author.** Rather, the proponent must produce sufficient evidence to support a finding that a particular person or entity was the author.

Pa.R.E. 901, Cmt (emphasis added).

During the contempt hearing, Nikole testified that she received a multitude of emails from three separate email addresses: nikolecole1369@gmail.com, jesusnazareth726@gmail.com, and godshand0726180@gmail.com. N.T., 4/8/24, at 8-9. Nikole stated that all three email addresses were created by Appellant, which she could readily discern based on the contents of the messages she received. *Id.* at 9. Nikole testified that the email messages

> always contain[] information about how [Appellant] believes that I am being held captive, being forced to prostitute, a prostitution ring, he wants to take out the guys who are doing it, he wants to save me, so on and so forth.

*Id.* At that time, the Commonwealth introduced Commonwealth's Exhibits 1-21, which were copies of emails Nikole received between January and February 2024. *See id.* at 9-10; *see also* Commonwealth's Exhibit's 1-21.

Nikole confirmed the exhibits fairly and accurately depicted the emails as they appeared on her computer. N.T., 4/8/24, at 10.

When the exhibits were introduced, Appellant requested that Nikole be required to "identify each exhibit individually and authenticate each exhibit individually and what forms her personal knowledge of every exhibit." *Id.* The trial court overruled Appellant's request, concluding Nikole had looked at each exhibit and authenticated them simultaneously. *See id.* at 11. Significantly, Appellant did not argue that the email exhibits were not properly authenticated through Nikole's testimony concerning the contents of the emails.

During cross-examination, Nikole acknowledged that an email address could be created using any name, but reiterated that the emails she received— from all three email addresses—shared similar content. *See id.* at 13. Nikole explained,

> [Appellant] asks about posting pictures of the pets because he wants to know if they're okay. He speaks about saving me from this prostitution ring he believes I'm in. [Appellant] asks about his friend Carl, who I know, and Carl's brother. [Appellant] talks about Lake Harmony, where he was working and living. He makes reference to how we know each other and what he used to think I was and what he thinks I am now.

*Id.* Further, Nikole testified Appellant had previously texted her and left voicemails containing the same information. *Id.* at 14.

Preliminarily, we consider whether Appellant preserved his authentication challenge for appellate review. "In order to preserve an

evidentiary objection for purposes of appellate review, a party must interpose a timely and specific objection in the trial court." ***Commonwealth v. Thomas***, 194 A.3d 159, 166 (Pa. Super. 2018). Failure to raise a timely and specific objection results in waiver of the issue on appeal. ***Commonwealth v. Spone***, 305 A.3d 602, 612 (Pa. Super. 2023); ***see also*** Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").

As set forth above, Appellant objected only to the authentication of the emails simultaneously, rather than in a piecemeal fashion. ***See*** N.T., 4/8/24, at 10. At no time did Appellant object to the introduction of Commonwealth's Exhibits 1-21 on the basis that Nikole's testimony did not sufficiently establish Appellant's ownership and use of the three email addresses. Accordingly, Appellant's sole evidentiary claim is waived. ***See Spone***, ***supra***.

Even if Appellant had properly preserved this issue, we would conclude that it lacks merit. Nikole testified she could identify Appellant as the author of the emails based on their subject matter. ***See*** N.T., 4/8/24, at 9-10, 13 (pointing to, *inter alia*, the email author's belief that Nikole needed to be saved from a prostitution ring and requests for photographs of her pets). Further, as the trial court explained, this matter includes a lengthy history of contempt proceedings based on Appellant making similar assertions to Nikole, as well as her family and friends. ***See*** Trial Court Opinion, 1/6/25, at 2. As the comment to Rule 901 states, "[t]he proponent of digital evidence is not

required to prove that no one else could be the author." Pa.R.E. 901, Cmt. Nikole's testimony provided sufficient circumstantial evidence connecting Appellant to the emails. *See* Pa.R.E. 901(11)(b)(i) (providing digital evidence may be authenticated through circumstantial evidence, including identifying content). Thus, we would discern no abuse of the trial court's discretion in admitting Commonwealth's Exhibits 1-21.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>8/4/2025</u>